## In re SHOPPING CART ANTITRUST LITIGATION.

**This Document Relates to all Actions.**

**Nos. M.D.L. 451–CLB, M–21–29 CLB.**

United States District Court,
S. D. New York.

Sept. 13, 1982.

**310**

Stanley M. Grossman, Stephen P. Hoffman, Pomerantz, Levy, Haudek & Block, New York City, David Berger, Berger & Montague, Philadelphia, Pa., Andrew M. Schatz, Sachnoff, Weaver & Rubenstein, Chicago, Ill., Kohn, Milstein & Cohen, Washington, D. C., Richard M. Meyer, Milberg, Weiss, Bershad & Specthrie, New York City, Stephen D. Susman, Susman & McGowan, Houston, Tex., Gene Mesh, Gene Mesh Co., L.P.A., Cincinnati, Ohio, Joseph A. Ruskay, Westport, Conn., David Jaroslawicz, New York City, Howard B. Weinreich, Rosengarten & Weinreich, Robert A. Skirnick, Wolf, Popper, Ross, Wolf & Jones, New York City, Wolf, Block, Schorr & Solis-Cohen, Leonard Barrack, Barrack, Rodos & MacMahon, Joel Meredith, Meredith & Cohen, Allen D. Black, Fine, Kaplan & Black, Philadelphia, Pa., Shea & Gould, Arthur N. Abbey, New York City, Warren Rubin, Gross & Sklar, P.C., Philadelphia, Pa., Ronald Litowitz, Kreindler & Kreindler, New York City, Jack Corinblit, Corinblit, Shapero & Seltzer, Edward S. Kendrick, Kendrick, Netter & Bennett, Los Angeles, Cal., Perry Goldberg, Specks & Goldberg, Ltd., Chicago, Ill., William Rosenfeld, Mineola, N. Y., Lawrence H. Eiger, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., James B. Sloan, Sloan & Connelly, P.C., Chicago, Ill., Stanley L. Kaufman, Kaufman, Taylor, Kimmel & Miller, New York City, Sidney M. Libit, M. Leslie Kite, Chicago, Ill., Scarpulla & Garlock, San Francisco, Cal., Michael Fischer, Foley, Lardner, Hollabaugh & Jacobs, Washington, D.C., Lawrence Walner & Assoc., Ltd., Chicago, Ill., Barbara E. Sarkin, Adler, Barish, Daniels, Levin & Creskoff, Philadelphia, Pa., J.J. Brandlin, Brandlin & McAllister, Los Angeles, Cal., Katz, Brenman & Angel, Merrillville, Ind., John Blazier, John C. Blazier & Associates, Austin, Tex., Sidney B. Silverman, Silverman & Harnes, New York City, Paul Seeley, Swanson, Ross, Hanfling & Block, James S. Gordon, Edward Slovich, Chicago, Ill., Robert D. Paul, Goodwin, Procter & Hoar, Boston, Mass., Titus, Marcus & Shapiro, Pittsburgh, Pa., Harold Brown, Brown, Prifti, Leighton & Cohen, Boston, Mass., Joseph M. Patane, San Francisco, Cal., Robert N. Kaplan, Kaplan, Kilsheimer & Foley, Jeffrey A. Fillman, Finley, Kumble, Wagner, Heine, Underberg & Casey, Herbert Robinson, Robinson, Perlman, Kirschner & Leffler, P.C., New York City, Robert C. Wright, Sullivan,

Jones & Archer, San Diego, Cal., Richard W. Bendinger, Giauque & Williams, Salt Lake City, Utah, Mark L. Austrian, Collier, Shannon, Rill & Scott, Washington, D.C., David R. Rosen, Stein, Simpson, Rosen & Ohrenstein, New York City, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., Josef D. Cooper, Kirk A. McKinney, Cooper, Kirkham, Hainline & McKinney, P.C., San Francisco, Cal., Jay J. Rice, Ravin Davis & Sweet, P.C., Woodbridge, N. J., Theodore Steingut, Berger, Steingut, Weiner, Fox & Stein, New York City, Richard A. Johnson, Arnold & Porter, Washington, D.C., Henry A. Brachtl, Lowey, Dannenberg & Knapp, P.C., W.R. Henrick, Carter, Ledyard & Milburn, New York City, Deborah Lewis Hiller, Calfee, Halter & Griswold, Cleveland, Ohio, for plaintiffs.

Albert M. Appel, Webster & Sheffield, New York City, James Holderman, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Stephen A. Weiss, Rosenbaum, Lerman, Katz & Weiss, New York City, Paul G. Bower, Gibson, Dunn & Crutcher, Los Angeles, Cal., David S. Acker, Winston & Strawn, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

### [Release of Grand Jury Testimony]

BRIEANT, District Judge.

These civil antitrust actions, consolidated before me for all pretrial purposes by orders of the Judicial Panel on Multidistrict Litigation, were preceded in time by a criminal case, *United States v. Roblin Industries, Inc., et al.,* 80 Cr. 530–LBS (S.D.N.Y. Indictment filed Sept. 4, 1980), in which all defendants in this action pleaded *nolo contendere* to an Indictment charging price-fixing in the shopping cart manufacturing industry. Plaintiffs now seek treble damages in this private antitrust action arising out of the same facts set forth in the Indictment.

By motion docketed March 15, 1982 and fully submitted for decision on June 9, 1982, plaintiffs seek access to the transcripts of the grand jury testimony ("the transcripts") of Woodrow W. Smeck and Carl W. Viacek ("the Witnesses"), former employees of the two largest defendants. For many years during the alleged conspiracy and until 1977, Mr. Smeck was Vice President of defendant Unarco Industries, Inc. and Mr. Viacek was President of the United Steel & Wire division of defendant Roblin Industries, Inc. Each was the head of the shopping cart manufacturing division of his respective employer, who were the largest shopping cart manufacturers in the United States. By virtue of their positions, each held final pricing responsibility for shopping carts manufactured by his company.

By affidavit and memorandum of law docketed March 25, 1982, the Antitrust Division of the Department of Justice, which is the custodian of these grand jury transcripts, does not oppose plaintiffs' motion so long as there is a showing of particularized need for the transcripts, and the Court enters a suitable protective order.

On April 5 and 12, 1982 the Witnesses filed motions to intervene and papers in opposition to plaintiffs' motion. Mr. Viacek filed additionally a motion to strike the affidavit and memorandum filed by the Department of Justice.

These motions were heard on April 13, 1982, at which time this Court granted leave to the Witnesses to intervene (Tr. of April 13, 1982 at 3–4), and denied Viacek's motion to strike (Tr. at 19–22). The Court also ordered that the affidavit and memorandum filed by the Government be sealed and impounded, in addition to all other papers relating to plaintiffs' motion, which would intrude upon the Grand Jury's secrecy if disclosed.

Plaintiffs also moved before the Honorable Leonard B. Sand of this Court, who presided over the preceding criminal case, for an order transferring the transcripts of the Witnesses "to this Court" pursuant to a procedure said to have been established in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 221, 224–28, 99 S.Ct. 1674, 1675–77, 60 L.Ed.2d 156 (1979). Whether this procedure was necessary is of no importance. The writer and Judge Sand are the same Court. In any event, Judge Sand found as follows:

"Smeck and Viacek primarily claim that transfer of the transcripts would violate their fifth amendment privilege against compelled self-incrimination. This contention is completely without merit. Both witnesses testified before the grand jury pursuant to a grant of use immunity. Since use immunity insures that that testimony can never be used against them in any criminal proceeding, an immunity in no way altered or diminished by the proposed transfer, they retain no protectable fifth amendment interest in merely preventing its possible disclosure.

We find that there are no special or extraordinary circumstances particular to this case which mandate secrecy and the Court therefore grants the plaintiffs' motion and transfers the grand jury transcripts ... to Judge Brieant ...." *United States v. Roblin Industries, Inc., et al.,* 80 Cr. 530–LBS (S.D.N.Y. Apr. 13, 1982).

Defendants herein oppose plaintiffs' motion, claiming that the plaintiffs have failed to establish a compelling and particularized need for the transcripts adequate to overcome the fundamental principle of Grand Jury secrecy.

For the reasons set forth below, this Court grants plaintiffs' motion and finds that plaintiffs have established a compelling and particularized need for the transcripts, and that the traditional policies served by Grand Jury secrecy will not be impaired if access is allowed under the circumstances of this particular case.

Our analysis begins with *Douglas Oil Co. v. Petrol Stops Northwest, supra* at 222–23, 99 S.Ct. at 1674–75, wherein the Supreme Court reviewed the rules governing disclosure as were previously set forth in *Dennis v. United States,* 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), and *United States v. Procter & Gamble Co.,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and held as follows:

"From *Procter & Gamble* and *Dennis* emerges the standard for determining when the traditional secrecy of the grand jury may be broken: Parties seeking grand jury transcripts under Rule 6(e) [F.R. Crim. P.] must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."

In determining whether to disclose grand jury transcripts, this Court must balance the need for disclosure against the traditional reasons for maintaining the secrecy of grand jury testimony. As was observed in *Procter & Gamble, supra* at 681–82, n. 6, 78 S.Ct. at 985–86, n. 6, quoting *United States v. Rose,* 215 F.2d 617, 628–29 (3rd Cir. 1954), the maintenance of secrecy of grand jury testimony is necessary:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

See also *Douglas Oil, supra,* 441 U.S. at 219, 99 S.Ct. at 1673; *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d 24, 32–33 (2d Cir. 1981).

In this case, the Shopping Carts Grand Jury has long since completed its investigation and has been discharged. It appears highly unlikely that there will be any further indictments or investigations relating to this alleged conspiracy, or to price-fixing

during the time period referred to herein. The possibility of potential defendants escaping, or interfering with the Grand Jury, its deliberations, or its witnesses is therefore nil. See *Douglas Oil* on remand after appeal to the Supreme Court, reported as *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1009, n. 2 (9th Cir. 1981), *cert. den. sub. nom. Conoco, Inc. v. Petrol Stops Northwest,* —— U.S. ——, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981).

The policy of secrecy which aims to encourage free and open testimony before the grand jury also seeks the avoidance of possible retribution against grand jury witnesses by the targets of the grand jury investigation. See *Douglas Oil, supra,* 441 U.S. at 219, 99 S.Ct. at 1673. Here, the targets, those considered generally most likely to retaliate against grand jury witnesses, already have substantial information concerning the Witnesses' grand jury testimony. The Witnesses were each "debriefed" after they testified before the Grand Jury by their personal attorneys, who conveyed the substance of the information so acquired to the attorneys for the Witness' former employer, who in turn shared this with other defendants. (Appel Aff., docketed April 2, 1982 at ¶ 6; Ex. E to Kaplan Aff., docketed March 15, 1982). It is reasonable to infer that defendants thereby obtained enough information to surmise the general substance of the Grand Jury testimony of these Witnesses, and obtained some specific details relating to the meetings, conversations and correspondence testified to before the Grand Jury.[1]

Any likelihood of retaliation, or threat of interference with free and open testimony before the Grand Jury has passed insofar as the Shopping Carts Grand Jury is concerned, and is *de minimus* in this case insofar as other, future, or hypothetical grand juries are concerned. *Petrol Stops Northwest,* 647 F.2d at 1009, n. 2.

The remaining factor as set forth in *Procter & Gamble* to be considered, *i.e.,* protection of those exonerated, is also entitled to no weight in this situation. These Witnesses were not exonerated, and there is no evidence that the Witnesses were ever targets of the grand jury investigation. Rather, they were cooperating individuals, who were granted immunity from prosecution in return for their testimony before the grand jury as to the misconduct of their employers and others.

Moreover, these Witnesses cannot claim that their business reputations might be injured by disclosure of their grand jury testimony. Defendants, who comprise 95% of United States shopping cart manufacturing industry, already know that the Witnesses testified before the grand jury under grants of immunity, and they know the substance of that testimony. Plaintiffs, who comprise a substantial percentage of United States shopping cart purchasers, also know that the Witnesses testified, and they can surmise the general scope of the Witnesses' knowledge of and participation in the alleged conspiracy, although they do not yet know the specific details contained in the grand jury transcripts. In addition, the Witnesses are both retired and therefore no longer maintain business relation-

---

1. Defendants' Affidavit in Opposition, docketed April 4, 1982, at ¶ 6, states:

"With respect to defendants' knowledge of the grand jury testimony of Messrs. Smeck and Viacek, it is not contested that defendants and their attorneys have never possessed and have never seen the grand jury transcripts here at issue. (Indeed defendants and their counsel have never seen *any* grand jury transcripts in connection with *U.S. v. Roblin.*) Moreover, Mr. Viacek was not debriefed concerning his grand jury testimony by Roblin's counsel. Mr. Viacek was debriefed only by his own attorney, who gave

Roblin's attorneys an oral report. I am informed that the same procedure was followed as to Mr. Smeck by his personal attorney and counsel for Unarco."

Defendants do not state the scope, extent or detail of the reports they received. We may infer that the reports were sufficiently detailed and covered the general substance of the entire testimony given by the Witnesses, because there was no reason to do otherwise and the matter was entrusted to attorneys, who may be assumed to have done their work properly. In any event, defendants learned enough about

ships within the shopping cart industry.[2] Consequently, disclosure of the grand jury transcripts to the parties to this action under an appropriate protective order, would not present any danger of injury to the business reputations of the Witnesses.

Neither will the limited disclosure granted by this Court result in disclosure to any "outside parties." *See Douglas Oil, supra,* 441 U.S. at 223, 99 S.Ct. at 1675, wherein the Supreme Court held:

"It is clear from *Procter & Gamble* and *Dennis* that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure. *It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.* Accord, *Illinois v. Sarbaugh,* 552 F.2d 768, 774 (CA 7), *cert. denied sub nom. J.L. Simmons Co. v. Illinois,* 434 U.S. 889 [98 S.Ct. 262, 54 L.Ed.2d 174] (1977); *U.S. Industries, Inc. v. United States District Court,* 345 F.2d 18, 21 (CA 9), *cert. denied,* 382 U.S. 814 [86 S.Ct. 32, 15 L.Ed.2d 62] (1965); 1 C. Wright, Federal Practice & Procedure § 106, p. 173 (1969). In sum, as so often is the situation in our jurisprudence, the court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court. And if disclosure is ordered, the court may include protective limitations on the use of the disclosed material .... [W]e emphasize that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion. See *Pittsburgh Plate Glass Co. v. United States,* [360 U.S.] at 399 [79 S.Ct. at 1240]."

Accordingly, this Court finds that "the need for continued secrecy" of the grand

jury transcripts at issue is almost non-existent, such that plaintiffs bear a "lesser burden in showing justification" for the release of the grand jury transcripts. Moreover, this Court finds that plaintiffs have met this burden by having established a sufficiently particularized and compelling need for the grand jury transcripts to permit this Court to "breach the walls of grand jury secrecy." *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F.2d at 32–33.

Plaintiffs present two overlapping contentions which are sufficient to satisfy the "particularized need" test. First, plaintiffs claim that the Witnesses possess information in various areas which could not be obtained from any other source. Such information includes: (1) the substance of alleged conspiratorial conversations between the Witnesses themselves; (2) information as to pricing decisions and alleged conspiratorial actions taken by the Witnesses individually in their positions as heads of the shopping cart manufacturing divisions of their respective employers; and (3) information as to the formation of the alleged conspiracy of which, it is said, the Witnesses were the moving force.

The central position in the conspiracy occupied by the Witnesses makes their testimony most important to this litigation. In this regard, it may be noted that the Witnesses have each indicated an intention to exercise their Fifth Amendment privilege on depositions and at the trial of this action, to the extent they have any.

The importance of the Witnesses' testimony is highlighted by the circumstances surrounding plaintiff's Joint Interrogatory 27, which required defendants to identify price communications between the defendants, including face to face meetings and telephone conversations.

Defendant Unarco's answer was that: "No person currently employed by Unarco participated in any meeting, communication or contact the identity of which is

the Government's case to decide to enter *nolo* pleas.

2. It appears that Mr. Smeck is completely retired and that Mr. Viacek is retired from the shopping carts industry.

sought by this interrogatory. On information and belief some such meetings, communications, or contact may have taken place, however, Unarco does not have knowledge of the specifics pertaining thereto."

It appears that the other defendants have not answered Interrogatory 27. A similar refusal to provide information was considered by the Supreme Court as a basis for finding particularized need in *Douglas Oil, supra,* 441 U.S. at 214–14, 217, 99 S.Ct. at 1670, 1671:

"In February 1974, respondents served upon petitioners a set of interrogatories which included a request that petitioners state whether either of their companies ... had any communication with any of their competitors concerning the wholesale price of gasoline .... Petitioners responded that they were aware of no such communications ....

\* \* \* \* \* \*

The Court of Appeals noted that ... a party seeking access to grand jury transcripts must show a 'particularized need' .... [As to] respondents' need for the requested material ... the court conceded that it knew little about the Arizona proceeding [for which the transcripts were sought], but speculated that the transcripts would facilitate the prosecution of respondents' civil suits: Petitioners' answers to the 1974 interrogatories concerning price communications with competitors appeared to be at odds with their pleas of *nolo contendere* in the California criminal action."

In light of the Witnesses' present failure and refusal to answer *any* substantive questions at deposition, it is evident that the plaintiffs have reached a dead-end with respect to testimony concerning the Witnesses' role in the conspiracy. Plaintiffs in this case could not obtain the information critical to this litigation, which the Witnesses possess from any other source. This is not a case where, "[i]f the grand jury transcript[s] were made available," the only result would be that "discovery through deposition, which might involve delay and substantial cost, would be avoided." *Procter & Gamble,* 356 U.S. at 682, 78 S.Ct. at 986; *United States v. Sobotka,* 623 F.2d 764, 768 (2d Cir. 1980).

Plaintiffs' second independent ground for disclosure is that the defendants already know the substance of the Witnesses' grand jury testimony, such that fairness requires that plaintiffs receive the same information. As Chief Judge Singleton said in *In re Corrugated Container Antitrust Litigation,* [1980–81] CCH Trade Cases ¶ 63,192 (S.D. Tex. 1980) at 77,922:

"The reasons for disclosure are, first, to arrive at a fair result in this litigation; second, to place the class plaintiffs in a position of parity with defendants as to knowledge of the grand jury testimony; third, to counter what plaintiffs allege is an unjustified and wholesale invocation of their Fifth Amendment privilege against self-incrimination by the witnesses in question. All of these reasons are really one; to enable the private plaintiffs to use the fruits of the enormous investigative power of the federal government where they are trying to enforce the antitrust laws as 'private attorneys-general,' and where they are unable without that aid to obtain meaningful discovery ... [T]he court finds that as to those transcripts to which any of the defendants have already had access the needs for disclosure outweigh the needs for secrecy."

Disclosure of the grand jury transcripts is necessary to ensure that both sides to this litigation have equal access to relevant evidence and information which may lead to admissible evidence. *Dennis v. United States,* 384 U.S. 855, 873, 86 S.Ct. 1840, 1850, 16 L.Ed.2d 973 (1966); *Illinois v. Sarbaugh,* 552 F.2d 768, 776 (7th Cir. 1977), *cert. denied sub nom. J.L. Simmers Co. v. Illinois,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); and *U.S. Industries, Inc. v. United States District Court,* 345 F.2d 18, 23 (9th Cir. 1965), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). The interests of fairness and parity of information, taken together with the other reasons, require release of the transcripts.

**316**

For the foregoing reasons, the Court also finds that the plaintiffs have satisfied the requisite showing of particularized need. Plaintiffs' motion is granted, subject to a protective order.

The parties to this action, the Witnesses, and the Government are directed to settle an appropriate protective order on ten (10) days notice of settlement, or on waiver of notice, if counsel can agree as to the form of the order. The protective order shall contain such reasonable provisions as the parties may propose, and shall provide that:

1. Within ten days of the date of the order and upon their compliance with the applicable provisions of this order, the Antitrust Division of the Department of Justice shall make transcripts of the Grand Jury testimony of Woodrow W. Smeck and Carl W. Viacek available to authorized designated counsel for the parties and the Witnesses.

2. No portion of the transcripts may be disclosed by such counsel to any persons other than counsel of record in this actions authorized to receive same, and counsel for the Witnesses, or the Witnesses themselves. The transcripts shall be kept confidential by all persons so receiving them, for use only in connection with this litigation and shall be returned to the Department of Justice upon its conclusion.

3. Access to the transcripts shall be limited to those counsel for plaintiffs or defendants whose clients have filed and mailed to the Witnesses a written waiver of any right to sue the Witnesses in their individual capacities for their actions relating to the conspiracy pleaded in this litigation.

4. Counsel possessing transcripts shall maintain, and file with this Court when and if requested, a log identifying by name and capacity each person to whom disclosure of any portion of the transcripts has been made, and further identifying with respect to each such person the portion of the transcripts so disclosed and the dates thereof.

5. No copies may be made of any portion of the transcripts.

So Ordered.