In re GRAND JURY INVESTIGATION.

John DOES I, II, III, IV, V and John Does, Inc. I, II, and III, Appellants,

v.

UNITED STATES of America, Appellee.

No. 1157, Docket 85–6054.

United States Court of Appeals, Second Circuit.

Argued April 9, 1985.

Decided Sept. 24, 1985.

Paul R. Grand, New York City (Grand & Ostrow, Diana Parker, Lawrence S. Bader, New York City, of counsel), for appellants John Doe I, II and John Doe, Inc. I.

Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, Roseland, N.J., for appellant John Doe, Inc. II.

Surrey & Morse, and Bergson, Borkland, Margolis & Adler, Washington, D.C., for appellants John Doe III, IV, and V, and John Doe, Inc. III.

Charles S. Stark, Washington, D.C. (Charles F. Rule, Acting Asst. Atty. Gen., Charles S. Stark, Craig W. Conrath, Anna Swerdel, Carolyn G. Mark, Robert B. Nicholson, Edward T. Hand, Dept. of Justice, Washington, D.C., of counsel) for appellee.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This is an appeal by five anonymous individuals and three anonymous corporations who were subjects of a grand jury investigation. After the investigation terminated without indictments, the Antitrust Division of the Department of Justice obtained an *ex parte* order under rule 6(e) of the Federal Rules of Criminal Procedure allowing disclosure of grand jury material to the civil division of the justice department and subsequently filed a civil complaint against the appellants. Appellants appeal from the denial of their motion to vacate the rule 6(e) order and for protective relief preventing the antitrust division from using grand jury materials to litigate the civil action.

### BACKGROUND

This appeal arises out of a federal grand jury investigation into bid-rigging and price-fixing by American companies in United States government-financed sales of a product to a foreign government. After notification by the Department of State that conduct by American companies engaged in these sales might warrant investigation for possible violations of the Sherman Act, 15 U.S.C. §§ 1 & 2, the Antitrust Division of the Department of Justice initiated a criminal investigation. During the investigation, a grand jury in the Southern District of New York heard the testimony of dozens of witnesses, including the individual appellants, and subpoenaed approximately 250,000 pages of documents, some of them documents from the corporate appellants.

In early June 1984 the antitrust division tentatively concluded that although appellants had violated § 1 of the Sherman Act, criminal prosecution was not warranted under the circumstances, and the grand jury dissolved without returning any indictments. Even though it had dropped the

criminal investigation, the antitrust division concluded that a civil action might be appropriate. The same government attorneys in the antitrust division who had conducted the grand jury investigation were instructed to pursue a civil investigation and, if appropriate, to prepare a civil complaint.

In late June 1984 the United States issued civil investigative demands (CIDs) for documents, pursuant to the Antitrust Civil Process Act (ACPA), 15 U.S.C. § 1311–14, to approximately two dozen persons, including the corporate appellants here, from whom the grand jury had subpoenaed documents. Since the scope of the CIDs overlapped that of the grand jury subpoenas, the antitrust division notified the CID recipients that they could comply with the CIDs by returning a certificate of compliance certifying that all documents called for by the CIDs had been produced pursuant to the grand jury subpoenas. While nearly all of the companies complied with this procedure, two of the three corporate appellants refused to sign the certificate of compliance, although the antitrust division advises that these two corporations informed the division informally that all documents sought in the CIDs had been produced pursuant to the subpoenas.

After further investigation the antitrust division determined that the appellants' conduct had violated both the Sherman act and the false claims act, 31 U.S.C. § 3729–31, and considered whether to bring its civil suit under both acts. Although the civil division of the justice department is charged with the primary duty of enforcing the false claims act, see 28 C.F.R. § 0.45(d), the antitrust division, as well, may bring such suits if the conduct in question also is alleged to violate the antitrust laws, see 28 C.F.R. § 0.40(a). In order to ensure "uniform and fair enforcement" of the false claims act, the antitrust division determined that it needed advice from the civil division as to whether, under the circumstances, a false claims action was warranted. The antitrust division also decided that in view of the venue of the action, it needed to secure similar advice from the office of the United States Attorney for the Southern District of New York.

The civil and antitrust divisions entered into preliminary discussions that did not involve disclosure of grand jury material. When the civil division indicated that it could not give the requested advice without access to certain grand jury materials, the antitrust division filed its *ex parte* motion, under seal, for an order pursuant to rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure permitting disclosure of certain matters that had occurred before the grand jury to both the civil division and the southern district United States Attorney's office.

After a hearing, Judge Palmieri entered a rule 6(e) order permitting "matters occurring before the grand jury" to be disclosed to specified attorneys or their designees in the two offices "provided that this information [would] be treated as confidential and its use [would] be limited solely to the purposes of this order."

The antitrust division subsequently prepared and provided the designated attorneys with four factual memoranda that analyzed and quoted from documentary and testimonial evidence presented to the grand jury. Some subpoenaed documents were attached to the memoranda. After reviewing this information, the civil division advised the antitrust division that a suit under the false claims act would be appropriate.

In early March 1985 the antitrust division notified appellants that it would file a civil complaint against them within two weeks. Appellants immediately moved in the district court to vacate the rule 6(e) order and for a protective order "prohibiting the use of grand jury material obtained in the * * * investigation in preparing, filing or litigating the civil action contemplated by the Antitrust Division". After a hearing, Judge Palmieri denied the requested relief.

After filing a notice of appeal, appellants moved in this court to prohibit any further disclosure or use of the grand jury material pending resolution of the appeal. We de-

nied the requested interim relief, but ordered that the appeal be expedited and that the anticipated complaint be sealed upon its filing in the district court. We also prohibited any disclosure of grand jury material to anyone not already privy to the information.

The complaint then filed under seal by the government does not quote from or refer to any grand jury transcripts or documents subpoenaed by the grand jury, and does not mention any witnesses before the grand jury or even refer to the existence of a grand jury.

On appeal, the appellants contend that: (1) an *ex parte* proceeding on the rule 6(e) motion was improper; (2) the principle of grand jury secrecy requires vacatur of the rule 6(e) order; and (3) the antitrust division may not use grand jury materials to litigate this civil case in the absence of a rule 6(e) order permitting such use.

## DISCUSSION

### I. *The Rule 6(e) Order.*

#### A. The *Ex Parte* Hearing.

Appellants first argue that the district court should not have granted the rule 6(e) order *ex parte*, but instead should have given notice to the appellants and held an adversary hearing.

Prior to 1983, rule 6(e) contained no provision for *ex parte* hearings. Nevertheless, the senate report on the 1977 amendments to rule 6(e) stated that "[i]t is contemplated that the judicial hearing in connection with an application for a court order by the government under [rule 6(e)(3)(C)(i) ] should be *ex parte* so as to preserve, to the maximum extent possible, grand jury secrecy." S.Rep. No. 354, 95th Cong., 1st Sess. 8, *reprinted in* 1977 U.S. Code Cong. & Ad.News 527, 532.

Rule 6(e)(3)(D), which took effect in 1983, explicitly provides that a petition for disclosure made pursuant to rule 6(e)(3)(C)(i) may be made *ex parte* "when the petitioner is the government". The Advisory Committee note on the 1983 amendment to rule

6(e)(3)(D) points out that "the rule provides only that the hearing 'may' be *ex parte* when the petitioner is the government", thus allowing the court to decide the matter "based upon the circumstances of the particular case."

■ Appellants contend that an adversary hearing would not have jeopardized grand jury secrecy since they were fully aware of the concluded grand jury investigation at the time of the government's request and nothing that was presented to the court *ex parte* was unknown to them. The government argues, however, that the facts sought to be disclosed were such that any meaningful discussion at an adversary hearing would have disclosed to the appellants the grand jury testimony and documents of parties other than the appellants. The government also notes that since the appellants included eight different persons, the court would have had to devise a procedure by which the grand jury testimony and documents of each appellant were shielded from every other appellant. In view of these circumstances, the district court did not abuse its discretion here by resolving the matter *ex parte*.

#### B. The Propriety of the Rule 6(e) Order.

Appellants next argue that the order should be vacated both because the antitrust division did not demonstrate the particularized need required to authorize disclosure and because the disclosure authorized by the order was too broad.

Under rule 6(e)(3)(C)(i), a district court "is infused with substantial discretion" to order disclosure of grand jury testimony preliminarily to or in connection with a judicial proceeding. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 223, 99 S.Ct. 1667, 1675, 60 L.Ed.2d 156 (1979). The Court has construed the rule, however, "to require a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). " '[D]isclosure is appropriate only in those cases where the need for it out-

weighs the public interest in secrecy * * ' ' ". *Id.* (quoting *Douglas Oil Co.*, 441 U.S. at 223, 99 S.Ct. at 1675).

█ The particularized need standard governs disclosure to the government as well as to private parties. *Id.* Nevertheless, a court need not pretend "that there are no differences between governmental bodies and private parties." *Id.*, 103 S.Ct. at 3149. The particularized need standard is a highly flexible one, and may accommodate "relevant considerations, peculiar to government movants, that weigh for or against disclosure in a given case." *Id.*

For example, disclosure to another division of the justice department probably poses "less risk of further leakage or improper use than would disclosure to private parties or the general public." *Id.* Further, since the grand jury investigation had terminated in this case at the time the antitrust division sought disclosure, some of the policies underlying grand jury secrecy—such as a fear that someone might attempt to corrupt witnesses or grand jurors—were no longer applicable. *See Douglas Oil Co.*, 441 U.S. at 219, 99 S.Ct. at 1672.

Nevertheless, even though these factors may weigh in favor of disclosure, the government must still make a threshold showing of particularized need. Judge Palmieri's order does not state that the antitrust division had made that showing, although he later stated, at the hearing on the motion to vacate the *ex parte* motion, that "the entire impact of the papers [the antitrust division] submitted were to show there was a particularized need", and that the government "went through a great deal of trouble to indicate why" they needed the order.

In its motion papers the antitrust division asserted that disclosure to the civil divisions of the justice department and the United States Attorney's office was necessary "to ensure that the Department acts consistently in its enforcement efforts * * *[,] to ensure that prosecution of this matter would carry out Department policy regarding the False Claims Act", and to allow the antitrust division "to take full advantage of the Civil Divisions' expertise in enforcing cases under the False Claims Act." The government elaborated that

Coordination between the Civil Divisions and the Antitrust Division is necessary to ensure the fair and even-handed administration of justice. It would be more difficult for the Department to achieve consistency and uniformity in its enforcement efforts if its officials were unable to learn the facts of relevant matters being investigated by staff attorneys in other divisions. This uniformity of enforcement is necessary not only to the Department but to the public as well. Without uniform enforcement, the public would have difficulty rationally choosing courses of action which might be affected by the antitrust and the civil fraud laws.

█ In evaluating a claim of particularized need, the district court " 'may weigh the public interest, if any, served by disclosure to a governmental body' ". *Sells Engineering*, 103 S.Ct. at 3149 (quoting *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 103 S.Ct. 1356, 1362 n. 15, 75 L.Ed.2d 281 (1983)). But the mere invocation of a "public interest" will not necessarily meet the heavy burden imposed by the particularized need standard. Thus, the government must do more than argue that disclosure is warranted because the grand jury materials sought are "rationally related to [a] civil fraud suit to be brought by the Civil Division", *id.*, or that such a suit is in furtherance of its "responsibility to protect the public weal", *id.*, 103 S.Ct. at 3148. Similarly, general goals such as "enhancing federal-state cooperation in antitrust enforcement, and encouraging more state lawsuits against price-fixers" are not sufficient to establish the requisite particularized need. *Illinois v. Abbott & Associates, Inc.*, 103 S.Ct. at 1364 (1983).

█ Here, the reasons advanced by the antitrust division for disclosure to the civil division are perhaps more compelling on their face than those advanced in *Sells* and

*Abbott.* But their import is diminished by the fact that the antitrust division could have provided the civil division with substantially the same information, without resorting to the disclosure of grand jury material. *See Sells Engineering,* 103 S.Ct. at 3149 (district court might take into account the sufficiency of alternative discovery tools available to the agency seeking disclosure). The antitrust division has broad precomplaint *ex parte* discovery powers under the antitrust civil process act, 15 U.S.C. § 1311, that are similar in many respects to a grand jury's powers. For example, the antitrust division may

> request the production of any documentary material, answers to written interrogatories or oral testimony which it has reason to believe is relevant to a civil antitrust investigation * * *. Moreover, ACPA's legislative history indicates that the Justice Department is to be given wide latitude when issuing CID's. Although the permissible scope of CID provisions is governed by either the grand jury subpoena standard or the civil discovery standard, * * * the House report accompanying the 1976 amendments to ACPA reveals a preference for the less stringent grand jury subpoena standard * * *.

*Associated Container Transportation (Australia) Ltd. v. United States,* 705 F.2d 53, 58 (2d Cir.1983) (citations and footnote omitted).

Although the civil division lacked these broader discovery powers, the antitrust division could have furnished the civil division with information gathered under the provisions of the ACPA. *See* 15 U.S.C. § 1313(c)(2) (authorizing disclosure of CID material to duly authorized employees of the Department of Justice).

The antitrust division asserts that access to CID materials alone would not have provided the civil division with sufficient information to ensure that a civil suit was appropriate, since the civil division needed to review the antitrust division's fact memoranda, which quoted extensively from grand jury transcripts. But given the anti-

trust division's ability under the ACPA to require oral testimony or answers to written interrogatories, it should have been able to construct equally illuminating fact memoranda without disclosing grand jury materials.

We recognize that requiring the antitrust division to ask the appellants for information through the ACPA, when the appellants have already produced that information in response to the grand jury subpoena, entails a certain amount of duplication. In some situations, however, all the antitrust division need do is reformulate subpoena requests into CIDs requesting production of the same material. In other cases, such as when the antitrust division seeks oral testimony duplicative of that given before the grand jury, a substantial amount of additional government time and effort may be required. But such a factor can play no part in our analysis. As stated by the Supreme Court in *Sells:*

> Of course, it would be of substantial help to a Justice Department civil attorney if he had free access to a storehouse of evidence compiled by a grand jury; but * * * [t]he civil lawyer's need is ordinarily nothing more than a matter of saving time and expense. * * * We have consistently rejected the argument that such savings can justify a breach of grand jury secrecy.

103 S.Ct. at 3142.

Our evaluation of the government's showing of particularized need is also influenced by the breadth of the court's order. The Supreme Court has "required that the showing of need for [grand jury material] be made 'with particularity' so that 'the secrecy of the proceedings [may] be lifted discretely and limitedly.'" *Douglas Oil Co.,* 441 U.S. at 221, 99 S.Ct. at 1674 (quoting *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)). Here, the order simply provides that the antitrust division may disclose to the specified individuals "matters occurring before the grand jury". The government's motion papers are equally unrestricted. They request permission to

disclose memoranda prepared by antitrust division attorneys, which include "a description and analysis of the evidence (both testimonial and documentary) uncovered by the grand jury and excerpts from documents and testimony of witnesses who appeared before the grand jury." Although it appears from these papers that the government intends to disclose only part of the grand jury material, it is impossible to tell what part would be disclosed.

In short, the government did not meet its heavy burden of demonstrating a particularized need for the disclosure, and the district court should not have issued the rule 6(e) order. Although we cannot restore the secrecy that has already been lost, since the memoranda have already been presented to the civil division, we nevertheless vacate the order to prevent any further possible disclosure to the civil division.

## II. *Use of the Grand Jury Materials in Civil Litigation.*

Appellants argue that the attorneys who conducted the grand jury investigation may not continue to use grand jury materials, without a rule 6(e) order, to litigate a civil case. The Supreme Court expressly left this question unresolved in *United States v. Sells Engineering, Inc.*, 103 S.Ct. 3133, 3141 n. 15 (1983), where the Court rejected the government's argument that attorneys in the justice department's civil division, who had *not* conducted the grand jury investigation, were entitled under rule 6(e)(3)(A)(i) to automatic disclosure of grand jury materials for use in preparing a civil suit against subjects of the grand jury investigation.

■ The issue presented here is more subtle. The threshold question is whether the continued access to grand jury materials by the attorneys who conducted the grand jury investigation—and worked with the materials during that time—even constitutes "disclosure". Assuming that only the two attorneys who actually worked on the grand jury investigation would have access to the grand jury materials in the civil phase of the dispute—when they will not be functioning as prosecutors—to characterize their continued access in the civil phase to the materials to which they had access in the criminal phase as disclosure within the meaning of rule 6(e) seems fictional at first glance. But the realities belie the apparent fiction. The testimony and documents here are voluminous, and we doubt that the two attorneys could independently recall the details of 250,000 pages of subpoenaed documents or the details of testimony by dozens of witnesses. Civil prosecution of the case would therefore invite them to refer repeatedly to the documents and transcripts of which they have prior knowledge and with which they may be partially familiar. Even when a criminal investigation has generated far fewer materials, any resort to these materials by the attorneys pursuing the civil matter to refresh their recollection as to documents or testimony to which they had access in the grand jury proceeding is tantamount to a further disclosure. Viewed in this context, to permit them continued access to the materials is equivalent to "disclosure". *See id.* at 3137 n. 6 (approving *In re Grand Jury Investigation No. 78-184 (Sells, Inc.)*, 642 F.2d 1184, 1187–88 (9th Cir.1981) ("Each day this order remains effective the veil of secrecy is lifted higher * * * by the continued access of those to whom the materials have already been disclosed.")).

■ That being so, the question then arises whether this type of disclosure requires a rule 6(e) order. Rule 6(e)(3)(A)(i) provides that disclosure otherwise prohibited by the provisions of rule 6(e) may be made to "an attorney for the government for use in the performance of such attorney's duty". While conceding that civil division attorneys fit within the definition of "attorney for the government"—as would the antitrust division attorneys here—the Court concluded in *Sells* that this subsection applied to the performance of the attorneys' duty to enforce the federal criminal law only and commented that disclosure for civil use without a rule 6(e)

order was "unjustified by the considerations supporting prosecutorial access, [and] threaten[ed] to do affirmative mischief." *Sells Engineering, Inc.*, 103 S.Ct. at 3142.

The *Sells* Court required a rule 6(e) order because disclosure to government attorneys for civil use in that case presented three problems: (1) it threatened to undermine the integrity of the grand jury itself; (2) it threatened to subvert limitations imposed outside the grand jury context on the government's discovery powers; and (3) it raised many of the same concerns that underlie the rule of secrecy in other contexts. To determine whether a rule 6(e) order should be required in the present circumstances, we must analyze these three potential problems in the context of antitrust prosecutors who are seeking to proceed civilly.

1. Any possible threat to the integrity of the grand jury is largely absent in this case. In *Sells*, the Court reasoned that if prosecutors knew that their civil division colleagues would be free to use grand jury materials in a civil case, they might be tempted to manipulate the grand jury process to root out evidence for a civil case that would be unnecessary in a criminal prosecution, or even to start a grand jury investigation where no criminal prosecution seemed likely.

This danger is substantially attenuated here in view of the antitrust division's extensive discovery powers under the antitrust civil process act, which the civil division lacked in *Sells*. The antitrust division would gain little by instigating a grand jury investigation for the purpose of gathering evidence for a civil proceeding, when it could gather that same information through its powers under the ACPA. Further, since a thoroughly prepared presentation to a grand jury in a criminal antitrust prosecution would probably uncover automatically most information that would be useful to a civil antitrust suit based on the same subject, there is little opportunity for the prosecutor to abuse grand jury investigations. And even though it is conceivable that some aspects of a civil case might require evidence different from what a prosecutor would seek for a criminal case, the prosecutor would also know that the antitrust division could seek this information through the ACPA if a civil suit were initiated. Under these circumstances, the threat to the integrity of the grand jury carries little weight.

2. The *Sells* Court's second concern was that automatic disclosure of grand jury materials threatened to subvert limitations on the government's powers of discovery and investigation that are applied outside the grand jury context. The Court commented that "[i]f government litigators or investigators in civil matters enjoyed unlimited access to grand jury material, * * * there would be little reason for them to resort to their usual, more limited avenues of investigation." *Id.* at 3143. Here, by contrast, the government's discovery powers under the ACPA are almost co-extensive with the grand jury's investigative powers.

We recognize that permitting the grand jury attorneys to use grand jury materials in a civil case would in effect give the government "exclusive access to a storehouse of relevant fact" which is closed to a civil defendant absent a showing of particularized need under rule 6(e). However, had the government collected the same information civilly under the ACPA, a similar limitation on the defendant's access would apply, for material obtained by the government under the ACPA may not be disclosed to third parties, other than duly authorized employees of the justice department, without the consent of the person who produced the material or from whom it was discovered. 15 U.S.C. § 1313(c)(3). Thus, we do not view either of the first two problems in *Sells* as reasons to require a rule 6(e) order here.

3. The Court's third concern in *Sells*, however, that disclosure to government bodies raises many of the same concerns that underlie the rule of grand jury secrecy in other contexts, carries significantly more weight in the circumstances of this case. First, in *Sells*, the Court noted that allowing automatic disclosure of grand jury ma-

terials to nonprosecutors for civil use increases the risk of illegal or inadvertent disclosure of such material to others. *Sells Engineering, Inc.*, 103 S.Ct. at 3142. If it only involved continued access by those antitrust division attorneys who actually carried out the grand jury investigation here, then the disclosure would admittedly be limited. But the risk of inadvertent or illegal disclosure arising from these attorneys' continuing access to the material is also significant. If the attorneys intend to use the testimony and documents in litigating the case, it borders on the unrealistic to assume that paralegal and secretarial staff and other necessary assistants would not also come into contact with the material. Indeed, counsel very likely have already used such assistants in preparing and releasing to the civil division the fact memoranda, memoranda which contained "a description and analysis of the evidence (both testimonial and documentary) uncovered by the grand jury and excerpts from documents and testimony of witnesses who appeared before the grand jury." Even though these support employees may have worked on the grand jury investigation and previously seen the grand jury material, it is still being disclosed to them in the sense that they have continued access to it. But since disclosure to nonattorney government personnel is expressly limited to disclosure for the purpose of assisting "an attorney for the government in the performance of such attorney's duty to enforce federal *criminal* law", Fed.R.Crim.P. 6(e)(3)(A)(ii) (emphasis added), even such limited disclosure would contravene the statute. Moreover, given the long life and complexity of many civil antitrust actions, it seems probable that some new support personnel will need to work on some aspect of the case, due either to employee turnover or to increased staffing needs. Any attendant disclosure to those new employees would also contravene rule 6(e)(3)(A)(ii). Finally, any such disclosure, even if not in itself in violation of the statute, would increase the risk of inadvertent disclosure to nongovernment personnel.

Second, the Supreme Court was also concerned that routine, automatic disclosure would create a risk that a witness, who knew that his testimony could be used in civil litigation, might be less willing to speak candidly before the grand jury "for fear that he [would] get himself into trouble in some other forum." *Sells Engineering*, 103 S.Ct. at 3142. This concern applies with equal force to grand jury investigations by the antitrust division.

On balance, we think that the threat of affirmative mischief posed by the use of grand jury materials in this civil action is somewhat less than that present in *Sells*, and we might be tempted to conclude that the antitrust division need not seek a rule 6(e) order to use grand jury material to litigate this civil action. But, however minimal the threat here, we are directed by the principle that "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of [grand jury] secrecy has been authorized." *Sells Engineering*, 103 S.Ct. at 3138. Certainly, such a clear indication is lacking here. Consequently, the reluctance imposed on us from above forces us to reinforce the principle of grand jury secrecy and requires, through a rule 6(e) order, judicial supervision of access to grand jury material by the antitrust division in this civil action.

Since the complaint filed by the government does not quote from or refer to any grand jury material, and since the statute of limitations on at least one of the government's claims has apparently run, we grant the appellants' request for protective relief only to the extent that we prohibit any further access to or use of grand jury materials by the antitrust division in the pending civil action, unless and until the antitrust division obtains a rule 6(e) order based on an appropriate showing of "particularized need" for use of the material.

Appellants state that "this case does not present the more difficult question of whether a prosecutor who conducted the grand jury proceedings may merely use his recollection of facts from those proceed-

ings to litigate a civil case." Since it would be almost impossible for any attorney in such a position to compartmentalize his thoughts and litigate a civil case without in some way using his recollection of facts learned during the grand jury investigation, we think that the real question is whether the prosecutor must be disqualified from litigating the civil case. Since appellants have expressly declined to present that issue, we are not called upon to address it.

CONCLUSION

We reverse the district court's denials of both the motion to vacate the rule 6(e) order and the motion to enjoin the antitrust division from any further access to or use of the grand jury materials in the civil action. We remand to the district court with a direction to grant both motions as indicated in this opinion, but without prejudice to a further application for a rule 6(e) order based on an appropriate demonstration of particularized need.