In re **GRAND JURY PROCEEDINGS,**
**GJ–76–4 & GJ–75–3.**

No. 85–5289.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1986.

Decided Sept. 12, 1986.

Stephen J. Mathes (Paul S. Diamond, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., John S. Stump, Boothe, Prichard & Dudley, Alexandria, Va., David Anthony, Gregory Smith, Pettit & Martin, Washington, D.C., George P. Hewes, III, Charles P. Adams, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Miss., on brief), for appellant.

Douglas Letter, Appellate Staff, Civil Div., U.S. Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Justin Williams, U.S. Atty., Alexandria, Va., James A. Metcalfe, Asst. U.S. Atty., Norfolk, Va., Leonard Schaitman, Appellate Staff Civil Div., Washington, D.C., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is an appeal from an order of the district court refusing to vacate an *ex parte* order authorizing the disclosure to the Civil Division of the Department of Justice of the grand jury transcript and exhibits in connection with an investigation of charges made by the petitioner Litton Industries, Inc. (Litton), under a government contract. The district judge found that the government had met the test of "particularized need" required for such disclosure under Rule 6(e), Fed.R.Crim.P. for use in defending a civil proceeding by Litton to recover extra charges. *See United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983). He accordingly granted disclosure to the Civil Division. Contending that the government had failed to establish "particularized need" under the standard established by the Supreme Court, Litton has appealed. We affirm.

## I.

This is a judicial proceeding that seems to have no end. It arose out of a contract executed in 1968 between Litton Industries, Inc. and the United States Navy for the construction of three nuclear submarines at its Ingalls Division in Pascagoula, Mississippi. Two years later (in 1970), Litton filed a claim for extra costs. The Navy contracting officer denied such claim except for $3 million. Litton appealed to the Armed Services Board of Contract Appeals (Board). The Navy sought a stay of such appeal, in order to permit consideration of possible fraud in the assertion of the claim. Stay was denied. The matter proceeded to a hearing before the Board. After the Board hearings had been concluded but before decision, a grand jury was impaneled in March, 1975, to investigate any possible fraud in Litton's claim. A month later the Board issued its decision, awarding Litton some $13 million beyond the $3

million allowed by the contracting officer. The initial investigatory grand jury's term expired without any indictment being returned.

After the term of the initial grand jury expired, discussions of settlement were carried on by the parties for a month or two until, in November of 1976, Litton terminated consideration of the Navy's proposal for settlement. The Department of Justice, to which the Navy's claim of fraud had been referred, submitted the matter of possible fraud by Litton to another grand jury for the purpose of seeking an indictment in February, 1977. When advised of this development, Litton sought to work out a settlement with the Department along the lines of an earlier proposal of the Government. After a hearing before the Attorney General, the determination was made to continue with the prosecution and on April 6, 1977, the grand jury returned an indictment against Litton for filing a false claim in violation of § 287, 18 U.S.C. On the same day, Litton filed its action in the then Court of Claims to recover the award made in its favor by the Board. To that action the government responded by denying Litton's claim and by asserting a counterclaim to recover for alleged fraudulent charges by Litton.

Litton moved in the district court where the criminal proceedings were pending to dismiss the indictment for prosecutorial misconduct and for collateral estoppel.[1] This motion was granted in May, 1977. Such dismissal was appealed and was reversed in April, 1978 by this Court, *U.S. v. Litton Systems, Inc.*, 573 F.2d 195 (4th Cir.1978), with denial of certiorari in October, 1978, 439 U.S. 828, 99 S.Ct. 101, 58 L.Ed.2d 121. In the meantime, Litton was seeking discovery in its civil suit. Obviously, there was, as the Court of Claims ob-

served, "a great deal of overlap of witnesses and other evidence" in the criminal and civil proceedings. 215 Ct.Cl. at 1056, 1057. For this reason the Government moved to stay discovery proceedings in the civil suit until after trial of the criminal proceedings. Among the reasons alleged for relief the government claimed "that Litton's discovery in the civil proceeding attempts to depose witnesses and to compel them to produce documents in their personal possession in order to obtain evidence that would not be available to Litton in the criminal proceeding prior to trial.... [and] that the depositions [in such discovery] will be one-sided in that Litton already has access to some grand jury evidence and will be able artfully to impeach government witnesses while the defendant, lacking such information will be unable to rehabilitate or refresh the recollections of the deponents." 215 Ct.Cl. at 1058. The Court of Claims trial judge denied the motion but, on appeal, the motion was sustained unanimously by a panel of the Court of Claims. 215 Ct.Cl. at 1059.[2] An original trial date for the criminal prosecution was fixed for June, 1977. In advance of that date, the Government "supplied Litton [with] copies of all grand jury testimony and intended trial exhibits," 722 F.2d at 264 (5th Cir. 1984), pursuant to an order of the district court made without any limitations on use.

Trial of the criminal case was delayed while Litton engaged in negotiation for settlement of the civil suit and dismissal of the criminal prosecution. On March 19, 1984, the Government moved *ex parte* for an order "authorizing the disclosure of evidence, both documentary and testimonial, presented to two Special Grand Juries convened ... from March 1975 to April 1977...." In support of that motion, the

---

**1.** Litton alleged in its motion to dismiss that "'[t]he subject matter of both the ASBA decision [which is the subject of the Court of Claims action] and the indictment are the same' and that the issues in the criminal prosecution and the ABSCA proceedings ... are 'identical'."

**2.** The Court of Claims order actually stayed discovery until the Fourth Circuit ruled on the

dismissal of the criminal indictment which was then on appeal. Litton later agreed to an extension of the stay until the completion of the criminal proceedings, however, when the government conditionally paid Litton the $13 million dollars at issue before the Court of Claims.

Government alleged it expected Litton to "seek to negotiate simultaneously a criminal plea and a civil settlement. In either event, government attorneys and personnel handling the civil litigation need to evaluate the grand jury materials, which are admittedly relevant and central to the issues in both the criminal and civil cases, and which *Litton* and its attorneys ... have had unfettered access [to] for seven years." The district judge promptly granted the motion *ex parte*.[3] Thereafter, following a two-months trial in the Mississippi district court, to which by a motion for change of venue the criminal prosecution had been transferred, Litton was acquitted of the criminal charge in December, 1984.

In August, 1985—after the criminal prosecution had been concluded but while the civil suit was still proceeding—counsel for the Government advised counsel for Litton in August, 1985 of the district court's earlier *ex parte* order releasing the grand jury records to the Government's counsel conducting the defense of the civil action. More than three months later Litton moved the district court to reconsider its order releasing the grand jury materials to the Government's counsel in the civil suit. By way of relief, Litton requested the entry of an order to reconsider and vacate the district court's *ex parte* disclosure order, to order the return of all grand jury materials, to forbid any Government attorney who had access to the grand jury materials from participating in the civil proceedings, to prohibit the Government's use of any grand jury materials in the civil suit, and to prohibit any further disclosure of grand

jury materials. That motion came on for hearing before the district court, and, after a full hearing, the district judge entered his order denying the motion.

In denying the motion in an oral opinion, the district judge first declared that whether proof of a "particularized need" for disclosure of the grand jury records under Rule 6(e) exists "depends ... on the circumstances of the [particular] case." He then found, based on his intimate connection with the case over the years, that the civil action between the parties in the Court of Claims and the criminal proceedings represented "parallel proceedings, and almost identical proceedings." He noted that the transcripts of the grand jury proceedings were "in the hands of Litton" and found a similar need on the part of the Government for "these transcripts even in a wholesale manner as they have asked to enable them to get the timely testimony of the witness to be able to impeach that witness if it [sic] testifies to the contrary, to allow them to conduct meaningful discovery in the Court of Claims civil proceedings." He further observed that the long "lapse of time" between the grand jury proceedings and the request for disclosure, as well as the disclosure to Litton, all of which he found to be a factor to be considered in resolving the issue of "particularized need", warranted the disclosure. Finally, he pointed out that much of the proceedings before the grand jury had "been thoroughly aired" in the criminal proceedings and that the need for secrecy of the grand jury proceedings is "just not as important or as crucial as it had been." He accordingly denied Litton's

---

**3.** The Rule expressly permits the granting of such a motion by the government *ex parte*. Section 6(e)(3)(D) of the Rule provides that the motion may be *ex parte* "when the petitioner [for disclosure] is the government...."

The petition of the government for the *ex parte* order referred to the fact that Litton had obtained previously an order of the trial court giving it complete access to the transcripts of all proceedings before the grand jury, including the documentary material, without any limitation on its use but while the government's counsel, pursuing this action, was deprived of all access to that material. As a result of this situation where Litton had unbridled access to all the

grand jury transcripts and materials and the government was denied such access in a case which Litton had alleged was "identical" both on its facts and issues to the criminal proceeding considered by the grand jury, the government alleged that Litton enjoyed "a decided advantage [over it] in preparation for the upcoming Claims Court proceedings." Further, the government, in its petition, alleged that it expected attempts by Litton to negotiate "simultaneously a criminal plea and a civil settlement" and that the government needed access to the same grand jury records as Litton in order to "evaluate" properly Litton's claims in any such attempted negotiations.

motion. It is that denial which is the subject of this appeal.[4]

## II

The traditional rule of grand jury secrecy is codified in Rule 6, Fed.R.Crim.P. The Rule, however, includes a number of exceptions under which the secrecy may be broken and disclosure made. Only one of these is relevant to this controversy. In subsection (e)(3)(C)(i) of the Rule, it is provided that disclosure of grand jury materials may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding." While other sections of Rule 6(e) authorize *ex parte* disclosure automatically both to government attorneys engaged in enforcing criminal law and to those assisting those attorneys "in the performance of such attorney's duty to enforce federal criminal law," Rule 6(e)(3)(C)(i) does not in similar explicit terms grant government attorneys engaged in civil proceedings any *ex parte* automatic right to disclosure of grand jury materials.[5] Despite this absence, it is said to have been routine in the Department of Justice to assume that (C)(i) conferred a like automatic right of access to Government attorneys engaged in civil litigation to that accorded those engaged in the enforcement of criminal law. Swenson, *The Implications of United States v. Sells Engineering, Inc. and United States v. Baggot,* 12 Am.J.Crim. Law 327, 329 (1984); *cf.,* however, *In re Grand Jury,* 82 F.R.D. 70, 73 (N.D.W.Va.1979). In *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), however, the Supreme Court authoritatively established the rule that a Government attorney engaged in civil litigation may not obtain automatic access to grand jury transcripts and documents for use "preliminarily to or

in connection with a judicial proceeding" but, like the private party, he must seek disclosure under the provisions of Rule 6(e)(3)(C)(i), which requires in all cases a prior court order.

After commenting that "[n]either the text of the Rule [i.e., (C)(i) ] nor the accompanying commentary describes any substantive standard governing the issuance of orders of discovery", the Court in *Sells* also provided some guidance on the actual application of the Rule. It declared that an applicant for disclosure under the Rule is required to make "a strong showing of particularized need for grand jury material before any disclosure will be permitted." 463 U.S. at 443, 103 S.Ct. at 3148. In enunciating this ruling on the showing an applicant for disclosure has to make to be successful, the Court relied on similar language, stated in somewhat more precise terms in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979):

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

The trial court, in determining whether to release grand jury transcripts and materials under this construction of the Rule as enunciated in *Sells* and *Douglas,* is to balance the petitioner's need for release against the traditional public interest reasons for grand jury secrecy and "only in those cases where the need for [disclosure] outweighs the public interest in secrecy" will the requirement of "particularized need" for release be found to exist. 463 U.S. at 443, 103 S.Ct. at 3148. The

---

4. The appealability of the order herein is not contested. *See In re Grand Jury Investigation,* 642 F.2d 1184, 1187 (9th Cir.1981).

5. The Rule does make a clear difference between the rights of the government and that of a private party in one instance. It does permit the granting of an order of disclosure *ex parte* on motion of the government but requires no-

tice in the case of a private party. This difference, recognized in the Rule, merely illustrates the difference that, under certain circumstances, is to be made between applications for disclosure to the government and disclosure to the private party, a point adverted to in *Sells,* as discussed later herein.

burden of demonstrating that the weight favors the moving party rests on that party. *Id.* Whether the balance in his favor has been demonstrated by the party seeking disclosure is a question committed for decision to the discretion of the trial judge, whose decision is to be reversed only for clear error. Such was the declaration of *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), where the Supreme Court said:

> In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it.

And in *Petrol Stops Northwest v. Continental Oil Co.,* 647 F.2d 1005, 1008 (9th Cir.) *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981),[6] being an appeal from the decision of the district court on remand in *Douglas,* the court repeated that "[g]rants of disclosure under Fed.R. Crim.P. 6(e) are reviewed for abuse of discretion."

While it is true that the courts have used terms of some "apparent linguistic rigor" in stating the standard of proof to be met by one seeking grand jury materials disclosure, we agree with the comment of the court in *Re Final Grand Jury Report, Etc.,* 197 Conn. 698, 501 A.2d 377, 382 (1985) that "[a] careful reading of the case law [both federal and state] reveals that [such standard] is principally a shorthand label for the flexibility and balance that is inherent in discretionary choice." This perceptive evaluation of the standard "particularized need" was but a restatement of what the Supreme Court itself said in *Illinois v. Abbott & Associates, Inc.,* 460 U.S. 557, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983): "But in rejecting such a rule, we stress that under the particularized-need standard, the district court may weigh the public interest, if any, served by disclosure to a

governmental body—along with the requisite particularized need—in determining whether 'the need for disclosure is greater than the need for continued secrecy.' " *Id.* at 568 n. 15, 103 S.Ct. at 1362 n. 15 (Quoting *Douglas* ). And in *Sells,* the Supreme Court declared flatly that the standard for establishing a right to disclosure under Rule 6(e) is not an excessive one but rather "is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." 463 U.S. at 445, 103 S.Ct. at 3149.

■ It follows that in any case where disclosure is sought, the existence or absence of the traditional needs for grand jury secrecy as well as the needs for disclosure must be carefully assessed under the balancing test mandated by *Douglas, Illinois* and *Sells.* The strength or weakness of the need for secrecy will naturally determine how strong or minimal must be the justification for disclosure made by the party seeking disclosure under this test. *See Pittsburgh Plate Glass,* 360 U.S. at 403, 79 S.Ct. at 1242 (Brennan, J., dissenting). If the reasons for secrecy, measured by an assessment of the relevant factors, are weakened or become minimal, the justification for disclosure will be diminished. Such strength or weakness may be resolved by a consideration of a number of factors of varying weight. And, on the other hand, when the balance is in favor of the petitioning party, disclosure is proper, for as Justice Brennan, the author of *Sells,* emphasized in his dissent in *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. at 403, 79 S.Ct. at 1242:

> Grand jury secrecy is, of course, not an end in itself. Grand jury secrecy is maintained to serve particular ends. But when secrecy will not serve those ends or when the advantages gained by secrecy are outweighed by a counter-vailing interest in disclosure, secrecy may and

---

6. Continental Oil Co. was an affiliate of Douglas Oil. Thus, while the two opinions differ in the name of the defendant, actually the two cases

had the identical defendant, called in one case *Douglas* and in the other *Continental. See* 441 U.S. at 213, n. 2, 99 S.Ct. at 1670, n. 2.

should be lifted, for to do so in such a circumstance would further the fair administration of criminal justice.

■ The public interest factors to be considered under the *Douglas* balance test are those "served by safeguarding the confidentiality of grand jury proceedings." 441 U.S. at 219, 99 S.Ct at 1673. These were identified by the Supreme Court in *Douglas* as

First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule. 441 U.S. at 219, 99 S.Ct. at 1673.

The trial court, in considering the motion to disclose, should consider as an additional public interest concern, "the possible effect upon the functioning of future grand juries" by encouraging persons to testify fully and freely before future grand juries. 441 U.S. at 222, 99 S.Ct. at 1674; *see also, Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 566, n. 11, 103 S.Ct. 1356, 1361, n. 11, 75 L.Ed.2d 281 (1983).

In *Pittsburgh Plate Glass*, Justice Brennan, in dissent, stated much the same public interests concerns in justifying grand jury secrecy, which must be considered in the balancing test. In his formulation these interests are: "(1) To prevent the accused from escaping before he is indicted and arrested or from tampering with the witnesses against him. (2) To prevent disclosure of derogatory information presented to the grand jury against an accused who has not been indicted. (3) To encourage complainants and witnesses to come before the grand jury and speak freely without fear that their testimony will be made public thereby subjecting them to possible discomfort or retaliation. (4) To encourage the grand jurors to engage in uninhibited investigation and deliberation by barring disclosure of their votes and comments during the proceeding." [7] 360 U.S. at 405, 79 S.Ct. at 1244.[8]

All of these reasons, as stated in *Douglas* and *Pittsburgh Plate Glass*, (Brennan, J., dissenting) and as we have already observed, may be and often are substantially weakened by the facts of the particular case. The facts considered in this balancing of reasons favoring or dissuading disclosure of grand jury materials are "necessarily couched in broad terms," *United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir.1980), vary from case to case, and, the exercise of the district court's discretion must be determined by the facts and circumstances of the particular case. *Douglas*, 441 U.S. at 223, 99 S.Ct. at 1675.

■ Probably the most common factual circumstance which is found in the decisions as a reason for regarding the public interest in grand jury secrecy diminished in a particular case is the fact that the grand jury whose materials are the subject of a disclosure motion has terminated its investigation. In *In Re Grand Jury*, 583 F.2d 128, 130–31 (5th Cir.1978), for example, the court said: "After a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less compelling." Judge Edelstein in *SEC v. Everest Management Corp.*, 87 F.R.D. 100, 104 (S.D.N.Y.1980) declared that after the grand jury has completed its investigation, "[t]he reasons for continued secrecy are

---

7. This further consideration has been removed by the language of 6(e), which eliminates from disclosure under the Rule the votes and deliberations of the grand jury.

8. This opinion preceded the adoption of Rule 6(e) in 1946.

few; consequently, the burden on movants to justify disclosure is lessened [though] not eliminated." And the Supreme Court has expressed itself similarly. Almost half a century ago Justice Douglas in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) bluntly put it that "after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it." [9] And in *Douglas*, the Supreme Court observed that, while the reasons for secrecy may not be entirely "eliminated merely because the grand jury has ended its activities," 441 U.S. at 222, 99 S.Ct. at 1674, that latter circumstance makes the effects of disclosure "less crucial" and will reduce the need for secrecy. *In re Grand Jury Proceedings*, 613 F.Supp. 672, 679 (D.Or.1985). If the grand jury investigation not only has terminated but, in addition, the resulting criminal proceedings themselves have been concluded without any threat of other prosecutions, the reasons for secrecy are weakened even further. *In re Shopping Cart Antitrust Litigation*, 95 F.R.D. 309, 312–13 (S.D.N.Y. 1982). Lapse of time between the grand jury proceedings and the motion for disclosure is likewise a factor to be considered on the issue of the public interest in continued secrecy since, as William Lytton in *Grand Jury Secrecy—Time for A Reevaluation*, 75 Journal of Cr. Law & Criminology, 1100, 1102 (1984) said, "The need for secrecy may diminish with the passage of time...." *See also, State of Illinois v. Sarbaugh*, 552 F.2d 768, 776, n. 12 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

Substantially, all the public interest considerations favoring secrecy are satisfied after the grand jury investigation and the resulting criminal proceedings have been exhausted except for the consideration of "the possible effect upon the functioning of future grand juries" as stated by Justice Powell in his opinion in *Douglas*. 441 U.S. at 222, 99 S.Ct. at 1674. This consideration, however, is seriously eroded if the

grand jury materials have already been disclosed, particularly if the disclosure was to the target of the grand jury investigation. This prior disclosure has breached the secrecy theretofore attaching to such materials. The identity of the witnesses is thereby disclosed and the exact nature of their testimony is revealed—without restraint or hindrance. If the witnesses before the grand jury can be harassed, coerced or intimidated by such disclosure, that peril became real when the prior disclosure was made. Additional disclosures—particularly disclosure to the government—is unlikely to increase the peril to the grand jury witnesses of harassment. Further, the consideration that disclosure of the grand jury materials might discourage future witnesses from testifying before a grand jury has little or any significance, it would seem, after a court has already long since released these materials to the target of the grand jury investigation without any limitation on use.

Moreover, all these public interest considerations may well present "less risk of further leakage or improper use," *Sells*, 463 U.S. at 445, 103 S.Ct. at 3149, in a case where the government is the movant for discovery. Justice Brennan in *Sells* recognized this fact. He said the Court, in conducting its balancing test on the issue of disclosure, was not required "to pretend that there are no differences between governmental bodies and private parties", 463 U.S. at 445, 103 S.Ct. at 3149, in determining whether to grant disclosure, since the same dangers of leakage from disclosure to the government are different from the dangers resulting from disclosure to a private party. Thus, *Sells* declares the trial court can take into account, where the government is the moving party, any relevant considerations:

peculiar to Government movants, that weigh for or against disclosure in a given case. For example, a district court might reasonably consider that disclo-

---

**9.** This language in *Socony-Vacuum* is quoted with approval by Justice Brennan in his dissent

in *Pittsburgh Plate Glass*, 360 U.S. at 403, 79 S.Ct. at 1243.

sure to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public. Similarly, we are informed that it is usual policy of the Justice Department not to seek civil use of grand jury materials until the criminal aspect of the matter is closed. Cf. *Douglas Oil, supra,* [441 U.S.], at 222–223 [99 S.Ct. at 1674–1675]. And "under the particularized-need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body...." *Abbott,* 460 U.S., at 567–568, n. 15 [103 S.Ct. at 1361–1362, n. 15]. On the other hand, for example, in weighing the need for disclosure, the court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure. 463 U.S. at 445, 103 S.Ct. at 3149.

 Over against these public interest considerations are to be balanced the "particularized needs" of the party moving for disclosure. As *Douglas* makes clear, and as we have already observed, the showing of "particularized need" may be diminished by the weakness of the public interests concerned in continued secrecy.[10] One's right to disclosure may not, however, rest simply on the weakness of the public interest considerations in favor of secrecy; there must be a showing of some real need on the part of the moving party. And this need, in the case of an application by the government, must be more than a legal conclusion that the Civil Division was entitled to disclosure on the Division's simple statement "that it has a legitimate interest in the disclosure" and has a "need" for disclosure, *In re Grand Jury Investigation,* 642 F.2d 1184, 1191 (9th Cir.), *cert. granted,* 456 U.S. 960, 102 S.Ct. 2034, 72 L.Ed.2d 483 (1982), that, as the court said, is no more than a ruling that the Civil Division

was entitled to disclosure "as a matter of right." *Id.* at 1187. This ruling of the Court of Appeals was affirmed on appeal in *Sells.* In this same case, it was held that an allegation that "the grand jury materials are rationally related to civil matters within the duty of the attorney for the government [in this case, a Civil Division attorney]", *Id.* at 1190–91, was insufficient standing alone, to support a finding of "particularized need." *Id.* at 1190–91. This is not to say that the fact that the grand jury materials are "rationally related" is irrelevant to the right of disclosure. Obviously, the materials must be "rationally related" for otherwise there would be no reason at all to disclose. *Id.* at 1190–91. What the ruling means is that there must be some additional showing that the disclosure of the "rationally related" grand jury materials would serve the interests of fairness and justice.[11] Ordinarily, "the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" 441 U.S. at 222 n. 12, 99 S.Ct. at 1674 n. 12. And this "particularized need" becomes "strong" both for purposes of trial preparation and for trial itself, when there has been prior unlimited release to one party in the litigation of the grand jury transcript and materials. In that case, disclosure is in order not merely to assure the accuracy of the testimony but also "to equalize the access to relevant facts which each side possesses" and to eliminate the obvious unfair advantage, arising from affording only one side "exclusive access to a storehouse of relevant fact."[12] Beyond this, it is contrary to the wholesome spirit of modern federal procedure to deny to one party evidence available to the other party. Such a procedure is too much like providing arms to one adversary and denying it to

---

10. In *Douglas,* Justice Powell said "It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." 441 U.S. at 223, 99 S.Ct. at 1675.

11. *See In Re Grand Jury Subpoenas,* 581 F.2d 1103, 1110 (4th Cir.1978), *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979).

12. *In re Screws Antitrust Litigation,* 91 F.R.D. 47, 50 (D.Mass.1981).

the other. The language of the Supreme Court in *Dennis v. United States*, 384 U.S. 855, 873-4, 86 S.Ct. 1840, 1850-1, 16 L.Ed.2d 973 (1966) states convincingly the reason against such a practice in this context:

> ... it is especially important that the defense, the judge and the jury should have the assurance that the doors that may lead to truth have been unlocked. In an adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts. Exceptions to this are justifiable only by the clearest and most compelling circumstances. For this reason we cannot accept the view of the Court of Appeals that it is "safe to assume" no inconsistencies would have come to light if the grand jury testimony had been examined. There is no justification for relying on "assumptions".[13]

### III

 Applying these principles in this controversy, we conclude the district judge did not abuse his discretion in granting disclosure and in refusing to vacate his order of disclosure. The public interest reasons that argue for continued secrecy are substantially answered by the facts of this case. The grand jury proceedings had terminated some four years before and the resulting criminal proceedings have been concluded by a jury verdict after what the district court described as a full "airing" of the entire controversy. Litton has had unlimited possession of the grand jury material for about eight years. There will be no opportunity for an accused to escape or to avoid arrest by reason of this additional disclosure if allowed; if Litton had wished [and we do not mean to suggest it would have], its opportunity to tamper, frighten or embarrass any potential grand jury witness has long passed; and whatever chances there may have been for retalia-

tion against an employee for his testimony before the grand jury ceased shortly after Litton acquired the grand jury transcript [there is, it should be said, no evidence of the slightest attempt in this regard]. Further, no witness before the grand jury in this case has come forward to request protection from disclosure, though the Rule, as we view it, unquestionably permits such intervention by a witness.

Moreover, it must be borne in mind that the grand jury investigation resulted in an indictment. The trial under that indictment lasted for two months. Voluminous testimony was taken. Witnesses—presumably many of those who had testified before the grand jury—testified. Documents were introduced. As the district judge said in granting disclosure, this whole matter has already been thoroughly "aired" publicly. Coupling this with the fact that Litton has had for eight years the grand jury material, we can perceive no abuse of discretion on the part of the district judge in releasing to the government the grand jury materials. Certainly Litton can claim no prejudice unless it be that for some reason it is to be given the advantage of access to a "storehouse of fact" to which the government, its adversary, is denied access. Furthermore, whatever effect disclosure might have on future grand jury proceedings occurred when prior disclosure was authorized and granting disclosure to the government now will not add materially to this effect.

It must be borne in mind, too, that the district judge who entered the order in this case had been intimately involved in this proceeding from its inception. He convened and was responsible for the grand jury which investigated the facts in this case. When an indictment was returned, it was returned before him. All the initial motions and proceedings in the criminal proceedings were before him. No one was better able than he to evaluate the reasons, pro and con, on the issue of disclosure.

---

**13.** This was a criminal case but the reasoning is equally applicable in a civil case such as we

have here.

There can be little argument that the government has a need for the grand jury materials if it is to litigate on equal terms with Litton in the civil proceedings. Litton obtained access to these materials because it was thought that such access was important in Litton's defense in the criminal action. Since, as Litton alleged, the issues in both the civil and criminal proceedings were "identical" and presumably the relevant evidence the same, the civil branch of the Department of Justice has the same interest in and the same right to this material as Litton had.[14] Moreover, because of the lapse of substantial time, access to a record made when the recollections were not so dim would be of great value in performing what Justice Powell described in *Douglas* to be "the typical showing of particularized need." 441 U.S. at 222 n. 12, 99 S.Ct. at 1674 n. 12.

The result reached by the district judge in this case follows precisely the pattern of decision in *Douglas.* The Supreme Court reversed *Douglas* in 441 U.S. 211, 99 S.Ct. 1667, it is true, but not on the merits of the motion to disclose; the reversal was because the determination to disclose was a matter committed to the discretion of the trial judge and the trial judge in that case was found not sufficiently acquainted with the facts of the case to exercise that discretion. As the Supreme Court put it, the district court sought "to make an evaluation entirely beyond its expertise." 441 U.S. at 228, 99 S.Ct. at 1677. In reaching this conclusion, the Supreme Court said the district court in California had made its decision in connection with a civil proceeding "pending several hundred miles away in Arizona," of which "he had no knowledge" and for an understanding of which he relied "largely upon the unsupported assertions of counsel during oral argument before it." 441 U.S. at 228–29, 99 S.Ct. at 1677–78. The cause was remanded by the

Supreme Court with the suggestion that the California court "after making a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate … to send the requested materials to the court where the civil cases were pending. The Arizona court, armed with its special knowledge of the status of the civil actions, then could [consider] the requests for disclosure in light of the California court's evaluation of the need for continued grand jury secrecy."

On remand in *Douglas,* the California district court decided that disclosure was appropriate. As stated in the opinion of the Court of Appeals, the California court, in reaching its decision,

noted that the first three reasons for grand jury secrecy were "of no pertinence whatsoever" in the instant case, since the grand jury was no longer in session and the criminal proceedings had terminated. The weight of the fourth factor—encouraging untrammeled disclosure—was sharply reduced by the fact that the transcripts Petrol Stops sought had already been released to Douglas and Phillips, so that disclosure to Petrol Stops would create no additional risk of reprisal by Douglas and Phillips against employees who had testified. The relevance of the fifth factor was greatly diminished because Douglas and Phillips had pleaded *nolo contendere.* 647 F.2d at 1009 n. 2.

The Arizona district court, "[g]iven that determination" by the California court, granted disclosure and on appeal, the decision granting disclosure was affirmed. *Petrol Stops Northwest v. Continental Oil Co.,*[15] 647 F.2d 1005, 1009 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981).[16] Our case is singular-

**14.** *See* note 3 *supra.*

**15.** This was the new title of the case.

**16.** It is interesting that Litton cited *Douglas* as establishing that the possession by the opposing party of the grand jury transcripts will not justi-

fy disclosure. It may be that, standing alone, that fact will not require disclosure absolutely but it is a significant fact in determining whether to disclose. In fact, it seems to have been the decisive fact inducing the court in *Douglas* on remand to grant disclosure. Litton strangely

ly similar to *Douglas.* All the facts cited by the district court in its order to disclose are present in this case. The grand jury investigation and the criminal proceedings have been terminated. During the criminal proceedings the defendant had obtained access to grand jury material just as here. And, the exercise of discretion in favor of disclosure was as justified in this case as the court, on remand, found it to have been in *Douglas.*

██ Litton has, however, cited *In re Grand Jury Investigation,* 774 F.2d 34 (2d Cir.1985), as supportive of its position here. We do not find such case apposite. As we have seen, each motion for disclosure must be weighed on the basis of its own facts. The factual background of the Second Circuit case is quite different from the facts in this case. Unlike the situation in this case, the motion for disclosure there was made almost simultaneously with the termination of the grand jury investigation. Even more important, there had been no prior breaking of the grand jury's seal of secrecy and disclosure to one party in a civil proceeding presenting the "identical" issue with which the grand jury investigation was concerned. Moreover, the Second Circuit seems to have been influenced in its decision because of the availability in the civil suit there involved of the Antitrust Civil Process Act, 15 U.S.C. § 1311–14, which provided the government in the suit a power of process "similar in many respects to a grand jury's powers." 774 F.2d at 39. No such right, however, exists in the Government in this case.

## CONCLUSION

Accordingly, we conclude the decision of the district court herein should be and is

AFFIRMED.

does not note this later opinion in the *Douglas* case, which largely answers its argument. Moreover, the denial of certiorari on the opinion after remand has more than normal impor-

tance. Had the new opinion been at variance with what the Supreme Court had earlier decided in the case it is to be assumed it would have reversed.