SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

EVEREST MANAGEMENT CORPORATION et al., Defendants.

No. 71 Civ. 4932 (D.N.E.).

United States District Court, S. D. New York.

June 17, 1980.

Robert M. Laprade, Lester Green, Securities and Exchange Commission, Washington, D. C., for plaintiff.

Maurice N. Nessen, Kramer, Levin, Nessen, Kamin & Soll, New York City, for F. Peter Zoch, III.

Norman Ostrow, Grand & Ostrow, New York City, for Jerome E. Treisman.

Alfred P. Herbert, Martin M. Frank, Feldshuh & Frank, New York City, for U. S. Secretarial Inst. Ltd.

Arthur H. Christy, Christy & Veiner, New York City, for Dear, Bier, and Martino, Jr.

Charles A. Stillman, New York City, for Ira A. Smith.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

The Securities and Exchange Commission moves this court, pursuant to rule 6(e)(3)(C)(i), Fed.R.Crim.P., for an order disclosing testimony and documents generated in the course of grand jury investigations of John P. Galanis and Akiyoshi Yamada. The SEC also seeks permission for Lester Green, an SEC attorney, to disclose to the Commission "certain information" he learned while assisting the United States Attorney for the Southern District of New York in the conduct of the aforementioned grand jury investigations. The Chief of the Business Fraud Section of the United States Attorney's Office for the Southern District of New York has informed the SEC that he has no objection to disclosure of the requested grand jury materials.

 Of the thirteen defendants remaining in this action, six have sought to oppose the SEC's motion.[1] Five defendants argue in the alternative, if disclosure is ordered, that grand jury materials be made available to defendants as well. In reply, plaintiff asserts it seeks no "unfair advantage" over defendants and that it will comply with any order of the court making grand jury materials selected by the Commission available to the remaining defendants. Supplemental Affidavit of Robert M. Laprade, April 9, 1980 at 3.

The circumstances which give rise to the present motion date back to 1970. From early 1970 through November 1971 the SEC conducted a formal investigation into the activities of Galanis and Yamada. As a

---

1. Defendants' opposing papers, except for those of F. Peter Zoch III, are defective. Counsel's affidavit on behalf of defendants Morton Dear, Robert Bier, and Thomas Martino was untimely filed, contains legal arguments, and was not accompanied by a memorandum of law "setting forth the points and authorities relied upon in opposition." Rule 9(b), General Rules of the U.S. District Court for the Southern District of N.Y. Counsel's affidavit on behalf of defendant Jerome E. Treisman argues the law and was not accompanied by a memorandum of law. Counsel for defendant Ira N. Smith did not submit a memorandum of law to accompany his affidavit. Although the court does not condone these defects, it will consider the papers submitted because the issue drawn here impacts the public interest in preserving the secrecy of grand jury proceedings.

Motion papers have not been served on counsel for two of the remaining defendants: United States Secretarial Institute, Ltd. and Alfred P. Herbert. According to plaintiff, counsel representing the two defendants "has been disbarred. No substitution of counsel has been noticed with the Court. Further service on counsel has been discontinued since all mail is being returned." The SEC's decision to discontinue service commends itself neither to reason nor law. If a party is no longer represented by an attorney, as necessarily was the case here, service *must* be made on the party himself. *See* Fed.R.Civ.P. 5(a), (b); *Vindigni v. Meyer*, 441 F.2d 376, 377 ·78 (2d Cir. 1971); 2 Moore's Federal Practice, ' 5.06 at 1351–52 (2d ed. 1978); 4 C. Wright & A. Miller, Federal Practice and Procedure, § 1145 at 583 (1969). In this instance, failure to serve the two defendants has not prejudiced their interests. *See Chief Freight Lines Co. v. Local Union No. 886*, 514 F.2d 572, 577 (10th Cir. 1975); *SEC v. Arkansas Loan & Thrift Corp.*, 297 F.Supp. 73, 77 (W.D.Ark.1969), *aff'd per curiam*, 427 F.2d 1171 (8th Cir. 1970). First, the SEC's motion is denied in substantial part, based on the public interest in securing the secrecy of grand jury proceedings. Second, those grand jury materials which will be disclosed will be made available to defendants as well as plaintiff. Third, access to such materials will not be ordered until after a conference is held to discuss procedures for disclosure of the documents. At that conference, the two defendants may present to the court their claims, if any, that disclosure, even on a limited and equal access basis, should not be allowed.

result of that investigation, this civil action was commenced in 1971 seeking permanent injunctive relief against Galanis and Yamada and forty-two other defendants.[2] Central to the SEC's 134 page complaint is the allegation that Galanis and Yamada, in consort with others, engaged in manipulative schemes to accumulate the float of certain common stocks, to raise the price of such stocks to artificially inflated levels, to unload the stocks at large personal gains, and to shield these acts from investors and the SEC.

Subsequent to filing this action in 1971, the SEC referred the matter of Galanis' and Yamada's activities to the United States Attorney's Office for the Southern District of New York for possible criminal prosecution. Original documents which the Commission had collected in the course of its formal investigation were transferred to that office. Green, an SEC attorney involved in the Commission's investigation of Galanis and Yamada, was detailed to the U.S. Attorney's Office to explain the SEC's criminal reference report and to assist in grand jury investigations. According to Green, "more than one grand jury was empanelled to consider the pre-1972 illegal activities of Galanis and Yamada" and "[a]pproximately 15 criminal actions were brought during the period 1972 through 1975 against 14 of the defendants in this civil action and against other persons not named in the complaint who were associated with these defendants in the illegal activities." Affidavit of Lester Green, March 14, 1980 at 4 & n.3. Although Green was never appointed a special assistant United States Attorney, 28 U.S.C. § 515(a), *see In re Perlin*, 589 F.2d 260, 265 (7th Cir. 1978), he was in "most instances" permitted to read grand jury transcripts and given access to grand jury documents.

During the time he assisted the United States Attorney with the grand jury investigations and with criminal trials when indictments were returned, Green continued to participate, to one degree or another, in the SEC's civil action pending before this court. Green avers: "From April, 1972 through the date of this affidavit, I was aware that I had an obligation not to disclose to my colleagues at the Commission any information which I had learned from my work in assisting the United States Attorney's office in connection with grand jury investigations into the activities of Galanis and Yamada. To date I have complied with this obligation." Affidavit of Lester Green, March 14, 1980 at 5–6.

In or about June, 1979, Green was informed by the Supervisor of the Mail and Records for the United States Attorney's Office for the Southern District of New York that "all documents pertaining to certain cases" he had worked on while detailed to the U.S. Attorney's Office were to be shipped, as records of closed cases, to government warehouses. Fearful that materials might be misplaced if shipped for storage, Green asked the United States Attorney's Office to place the materials in sealed cartons and to send them to the SEC's headquarters in Washington, D. C. This was done. Twelve sealed boxes were received by the SEC in Washington, D. C. and they remain there, under seal, pending resolution of the present motion for disclosure of grand jury materials the SEC believes are contained in the boxes. If disclosure is ordered, the SEC intends to "cull out" from the materials contained in the boxes[3] grand jury materials (transcripts and documents) relevant to the remaining allegations in this civil proceeding.

**2.** As of the present date, final judgments of permanent injunction have been issued against twenty-nine defendants including Galanis and Yamada. Two defendants have been dismissed pursuant to rule 41(a), Fed.R.Civ.P.

**3.** According to the SEC, the boxes contain: transcripts of testimony given before the grand juries investigating the activities of Galanis and Yamada; original documents obtained by the Commission in the course of its investigation of Galanis and Yamada and subsequently transferred to the U.S. Attorney's office; original documents obtained through subpoenas issued by the grand juries investigating Galanis and Yamada; materials pertaining to the criminal trials of those indicted by the grand juries; and privileged legal memoranda prepared by staff attorneys for the SEC and the U.S. Attorney.

### Grand Jury Transcripts

■ When confronted with a request for disclosure of grand jury transcripts "preliminary to or in connection with a judicial proceeding," Fed.R.Crim.P. 6(e)(3)(C)(i), the court must balance the need for disclosure against the policy of grand jury secrecy. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). "The guidance provided by the Supreme Court for those courts which must perform this delicate balancing function is necessarily couched in broad terms." *United States v. Sobotka*, 623 F.2d 764 at 767 (2d Cir. 1980). The facts and circumstances of each particular situation, as well as the general standards articulated by the Supreme Court, inform the district court's "substantial discretion." *Douglas Oil, supra*, 441 U.S. at 223, 99 S.Ct. at 1675. *See In re Corrugated Container Antitrust Litigation*, 1980 Trade Reg.Rep. (CCH) ¶ 63,192 (S.D.Tex. Jan. 25, 1980).

■ The grand juries investigating Galanis' and Yamada's "pre-1972 activities" have concluded their work. The reasons for continued secrecy are few;[4] consequently, the burden on movant to justify disclosure is lessened. *Douglas Oil, supra*, 441 U.S. at 222–23, 99 S.Ct. at 1674–1675. But as Judge Mulligan emphasized in *Sobotka, supra*, that burden is not eliminated. A showing of particularized necessity must still be made.[5]

■ The SEC states that the grand jury transcripts it hopes to find in the twelve sealed boxes[6] may enable it "to expedite this civil proceeding through the summary judgment route . . . . ." Affidavit of Robert M. Laprade, February 29, 1980 at 3. While this court would welcome any development expediting the SEC's prosecution of this action, expedition does not justify disclosure of grand jury transcripts. *Cf. United States v. Procter & Gamble*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (avoidance of "delay and substantial costs" is not "compelling necessity" for disclosure of grand jury transcripts).

■ Of greater significance is the SEC's intent to use grand jury testimony given by the remaining defendants (if such testimony is found in the twelve boxes, *see* note 6 *supra*) to cross-examine those defendants and to refresh their recollections during depositions the SEC plans to take. There is support for such use of grand jury transcripts during depositions. *E. g., Illinois v. Sarbaugh*, 552 F.2d 768, 776 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *Atlantic City v. A. B. Chance & Co.*, 313 F.2d 431 (2d Cir. 1963); *Illinois v. Harper & Row Publishers, Inc.*, 50 F.R.D. 37, 40 (N.D.Ill.1969). However, there has been no particularized showing of need here such that the "secrecy of the [grand jury] proceedings [may be] lifted discretely and limitedly." *United States v. Procter & Gamble, supra*, 356 U.S. at 682–83, 78 S.Ct. at 986; *Sobotka, supra*, 623 F.2d at 767. This is not a case where "disclosure can be limited strictly to those portions of a particular witness' [grand jury] testimony that bear upon some aspect of his direct testimony . . . . ." *Douglas Oil, supra*,

---

**4.** *United States v. Moten*, 582 F.2d 654, 663 (2d Cir. 1978) ("Generally, the only reason that survives the conclusion of an investigation is the encouragement of disclosures by those with knowledge of crime.") *Compare United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 n.6, 78 S.Ct. 983, 985–986, 2 L.Ed.2d 1077 (1958) *quoting United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954) (reasons for grand jury secrecy) *with Douglas Oil, supra*, 441 U.S. at 222, 99 S.Ct. at 1674 (reasons for grand jury secrecy which survive conclusion of the grand jury's investigation).

**5.** In assessing the SEC's showing, the court takes into account that disclosure here is "not simply sought by a private person for use in a judicial proceeding" but rather by an independent agency acting to fulfill its mandate. *Sobotka, supra*, 623 F.2d at 767.

**6.** The SEC identifies no specific transcripts, but assumes that certain of the remaining defendants in this action have testified before grand juries investigating Galanis and Yamada, and that transcripts of their testimony are contained in the twelve boxes. The Commission's request is not limited to defendants' grand jury testimony, but extends to relevant testimony given by other unidentified witnesses who appeared before the grand juries.

441 U.S. at 222 n.12, 99 S.Ct. at 1674. The deposition testimony in question has not yet been given; hence, the need for grand jury transcripts is, in part, speculative.

The wholesale discovery of grand jury transcripts sought by the SEC is denied without prejudice.

### Grand Jury Documents

The Commission has requested permission to cull through the materials contained in the twelve boxes in an effort to locate original documents (brokerage, bank, and corporate records) relevant to this action. According to the SEC, most of these documents were initially produced to the Commission in the course of its formal investigation of Galanis and Yamada. The documents were then transferred to the United States Attorney's Office together with the SEC's criminal reference report. "While copies were made by the Commission of these documents, in many instances the copies are imperfect and illegible. In some instances some of the copies have become misplaced." Affidavit of Robert M. Laprade, February 29, 1980 at 2. The remainder of the grand jury documents contained in the twelve boxes are alleged to be original documents produced directly to the grand juries pursuant to grand jury subpoenas.

■ A request for grand jury documents evokes different, and less exacting, considerations than a request for transcripts of grand jury testimony. *Illinois v. Sarbaugh*, 552 F.2d 768, 772 n.2 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *see United States v. Stanford*, 589 F.2d 285, 291 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). Documents produced to the grand jury do not intrinsically reveal what transpired in the grand jury room. This reasoning has led some courts to comment that documents may not fall within the ambit of rule 6(e)'s secrecy requirement. *United States v. Weinstein*, 511 F.2d 622, 627 n.5 (2d Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *In re Grand Jury Investigation of Ven-Fuel*, 441

F.Supp. 1299, 1303 (M.D.Fla.1977). The more prevalent view, and the one opted for by this court, is expressed in *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960): "Documents as well as oral testimony of course may come within rule 6(e)'s proscription against disclosure." Emphasis is placed on the purpose for which grand jury documents are sought. Disclosure is appropriate where documents are sought to further legitimate purposes in connection with lawful investigations or judicial proceedings. *See, e. g., Interstate Dress Carriers, Inc., supra*, 280 F.2d at 54 (disclosure to further lawful agency investigation); *United States v. Saks & Co.*, 426 F.Supp. 812, 815 (S.D.N.Y.1976) (same); *Capitol Indemnity Corp. v. First Minnesota Construction Co.*, 405 F.Supp. 929, 931 (D.Mass.1975) (disclosure to further discovery in civil litigation).

■ Grand jury documents are sought here for a legitimate purpose—use in a civil proceeding. While the SEC's need for these documents is largely occasioned by its carelessness, disclosure will save the parties in this action from costly, and perhaps futile, discovery of documents produced to the SEC or directly to grand juries almost ten years ago. *Cf. United States v. Saks & Co.*, 426 F.Supp. 812, 815 (S.D.N.Y.1976) (disclosure of grand jury documents is in the "public interest" and will enable FTC to proceed "at a minimum of expense"). Rule 6(e) does not bar disclosure of these documents.

### Disclosure by Green

The SEC requests that Green be authorized to disclose, to the SEC "information he learned while assisting the United States attorney in the conduct of the grand jury investigations, deemed absolutely necessary to the prosecution of the civil action." Affidavit of Robert M. Laprade, February 29, 1980 at 5. Green is said to be the only Commission employee "having a working knowledge of the complex and extensive facts and issues essential to the prosecution of the remaining defendants in this action." Plaintiff's Memorandum at 13.

■ The parties ignore a question antecedent to the SEC's request: whether grand jury matters were properly disclosed to Green during the time (1972–1975) he assisted the United States Attorney.[7] The court is of the opinion that disclosure of grand jury materials to Green, without court order, was appropriate at that time under case law authorizing disclosure to agency representatives assisting an U.S. Attorney.[8] In 1977 Congress amended rule 6(e) to make it clear that the rule authorized disclosure, without court order, to "such government personnel as are deemed necessary by an attorney for the government to assist him in the performance of his duty to enforce federal criminal law." Fed.R. Crim.P. 6(e)(3)(A)(ii), Pub.L. 95–78. *See In re Perlin*, 589 F.2d 260, 266–68 (7th Cir. 1978); S.Rep. No. 95–354, 95th Cong., 1st Sess. (1977) p. 7, *reprinted in* 1977 U.S.Code Cong. & Admin.News, pp. 527, 530–31. Amended rule 6(e) further provides that, absent a court order authorizing disclosure, ". . . any person to whom matters are disclosed . . . shall not utilize the grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed. R.Crim.P. 6(e)(3)(B).[9]

■ There has been no showing of any sort what information Green seeks to disclose. Thus, the court cannot balance the need for disclosure against the consequences, if any, disclosure might have on the secrecy of grand jury proceedings. If "certain information" includes Green's recollections of specific grand jury testimony, for example, then the considerations discussed *supra* (disclosure of grand jury transcripts) apply here as well. Plaintiff's request is denied without prejudice.

Accordingly, it is hereby ordered:

The twelve sealed boxes, presently located in the SEC's Washington, D. C. headquarters, shall be shipped to the United States Courthouse located in the Southern District of New York, marked to the attention of the Clerk of the Court, to remain there under seal pending further order of the court.[10]

So ordered.

---

7. As stated *supra*, at no time was Green ever appointed a special assistant United States Attorney, 28 U.S.C. § 515(a).

8. During the time Green assisted the United States Attorney, rule 6(e) authorized disclosure of grand jury matters to "attorneys for the government", who were defined under rule 54(c), Fed.R.Crim.P., as "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney . . . ." Applying a strict interpretation to rule 54(c), two courts held that attorneys for government agencies were not "attorneys for the government" and, therefore, were not entitled to receive grand jury documents, absent a court disclosure order, to further their agency's investigations. *In re Grand Jury Proceedings*, 309 F.2d 440 (3d Cir. 1962); *In re Grand Jury Investigation*, 414 F.Supp. 74 (S.D.N.Y.1976). But, disclosure without a court order to government personnel, including representatives of agencies, was upheld where such personnel were actively assisting, and under the supervision of, "attorneys for the government." *E. g., United States v. Stanford*, 589 F.2d 285, 291–92 (7th Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Evans*, 526 F.2d 701, 707 (5th Cir. 1976); *In re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464, 475 (E.D.Pa.1971); *United States v. Anzelmo*, 319 F.Supp. 1106, 1116 (E.D.La. 1970). *Cf. Application of Kelly*, 19 F.R.D. 269 (S.D.N.Y.1956) (court assumed, without discussing, the right of the United States Attorney to disclose, apparently without court order, grand jury matters to IRS and FBI agents assisting him). *See* Notes of Advisory Committee on Rules, 1977 Amendment to rule 6(e), Fed.R.Crim.P. and cases cited therein.

9. Prior to 1977, this restriction was implicit in those decisions, *see* note 8 *supra*, authorizing disclosure to government personnel actively assisting, and under the supervision of, "attorneys for the government." *See* Notes of Advisory Committee on Rules, 1977 Amendment to rule 6(e), Fed.R.Crim.P.

10. After receipt of the boxes, the court will schedule a conference to discuss procedures whereby grand jury documents shall be made available to plaintiff and defendants for inspection and copying.