Thomas K. Ashcraft, U.S. Atty., Charlotte, N.C., for petitioner.

Kenneth T. Davies, Charlotte, N.C., Peter M. Feaman, Marchbanks & Feaman, P.A., Boca Raton, Fla., for respondent.

**In re UNITED STATES of America**

**v.**

**6918 NORTH TYRON STREET, CHARLOTTE, NORTH CAROLINA.**

**No. WNC–2–84–162M.**

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 16, 1987.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Petition of Insurance Corporation of America ("ICA" or "Petitioner"). Petitioner is seeking under Rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure disclosure of certain documents that were obtained pursuant to a subpoena duces tecum and presented before the grand jury convened in the Western District of North Carolina, in Charlotte. For the reasons that follow, Petitioner's request will be granted to the extent set forth in this Order.

## BACKGROUND

On September 11, 1984, the United States District Court for the Western District of North Carolina issued a subpoena duces tecum directing James Stuart, or other authorized representatives of the West Virginia Department of Insurance, to bring to the Grand Jury Room in the Charles R. Jonas Federal Building, in Charlotte, certain documents or, alternatively, to surrender the documents to the agent serving the subpoena. The subpoena listed various items:

Any and all original items and documents pertaining to the Insurance Corporation(s) of America and/or Robert Eugene Bales, also known as Robert Eugene Bailes, to include but not limited to: (1) Charters of Incorporation (2) By-laws (3) Lists of Directors, (4) Documents which reflect stock listings (5) Documents which reflect names and addresses of authorized representatives in include owners, officers, trustees, etc., (6) Documents reflecting names and addresses of persons who incorporated and/or filed Insurance Corporation(s) of America

with the State of W.Va. (7) Documents which reflect method of payment for filings with Department of Insurance, (8) Documents which reflect change of name from "Pocahontas Insurance Co." to "Insurance Corporation(s) of America" and/or any other name changes (9) All other documents which may tend to prove or disprove the legitimacy of Insurance Corporation(s) of America; and (10) Documents which reflect tax filings. Petition For Disclosure at Exhibit A, *In re United States v. 6918 North Tyron Street* (WNC–84–162–M) [hereinafter Petition] (Subpoena dated September 11, 1984). These records were apparently received by a "special agent" on September 20, 1984, as indicated by the hand written signature and notation on the bottom of the subpoena duces tecum. *See id.* Since that time, the documents have been in the possession of the United States Attorney for Charlotte, North Carolina, and the Charlotte, North Carolina Federal Bureau of Investigation ("F.B.I.") *Id.*

On August 4, 1987, a grand jury convened in the Western District of North Carolina, Charlotte Division, and returned a true bill of indictment charging twenty-four counts against Robert Eugene Bailes. Bailes was charged with four counts of causing interstate travel in execution of a scheme to defraud, thirteen counts of wire fraud, four counts of misrepresentation of a social security account number, not his own, and three counts of perjury.

The indictment against Bailes charges him with offenses surrounding the offering for sale of certain insurance companies he allegedly participated in and controlled. The indictment alleges that these companies, including Insurance Corporation of America, had no real and substantial operating existence and did not possess the assets and deposits allegedly claimed by Bailes.

In the Summer of 1986, an individual named A.R. Johnson contacted Assistant United States Attorney, Debra J. Stuart, and informed her that he was considering purchasing Insurance Corporation of America from Bailes. At that time, Mr. Johnson was warned that Bailes had been convicted in the past of various felonies, was the subject of prior investigations by the federal authorities in Charlotte, and was then being prosecuted in the Eastern District of Virginia. In spite of these warnings, in October 1986 Johnson purchased Insurance Corporation of America. *See* Petition at Exhibit B (affidavit of attorney Peter M. Feaman asserting that Johnson owns 100% of the shares of the Insurance Corporation of America). The government alleges that Johnson bought the corporation without original certification of its status by appropriate state officials or verification of its assets.

After the purchase, Insurance Corporation of America conducted an insurance business on a "more or less national basis." Petition at 2. Thereafter, separate proceedings were brought by the State of Florida and the State of Connecticut seeking to enjoin Insurance Corporation of America from transacting business in those states. The Connecticut action was removed to federal court, and it is now pending in Hartford, Connecticut. *See Connecticut v. Insurance Corp. of America,* Civ. Action No. H–87–441 (PCD).

In *Connecticut v. Insurance Corp. of America,* Civ. Action No. H–87–441 (PCD), the State of Connecticut is seeking to enjoin Insurance Corporation of America from doing business in Connecticut without an insurance license issued by the state. Insurance Corporation of America, in defense, is asserting that, notwithstanding the lack of a license, it is entitled to do insurance business in Connecticut because two court decisions purportedly held that Insurance Corporation of America has "grandfather" rights, by virtue of its 1872 West Virginia corporate charter, permitting it to operate unregulated throughout the United States.

Petitioner asserts in this Court that it needs any and all documents held by the federal authorities in Charlotte relating to Insurance Corporation of America because it wants to prove in the civil proceeding in the federal district court in Connecticut the following:

1) That Insurance Corporation of America was in fact chartered in West Virginia in 1872;

2) That Insurance Corporation of America is now in good standing in West Virginia;

3) That Insurance Corporation of America has been in existence since 1872;

4) That the Articles of Incorporation and the By-laws of Insurance Corporation of America show it to be a validly organized insurance company in West Virginia.

Petitioner asserts that the documents held by the federal authorities are all necessary elements of Petitioner's burden of proof in the Connecticut case, and no other records would be more relevant to its defense of the action now pending in Connecticut and Florida. Petitioner has requested previously that the State of West Virginia's Departments of State and Insurance make the documents related to the Insurance Corporation of America available, but those offices indicated that all original documentation pertaining to Insurance Corporation of America had been delivered to the federal government pursuant to the subpoena duces tecum. *No copies were kept.*

## CONTENTIONS OF THE PARTIES

Petitioner asserts that this Court should exercise its discretion and order disclosure of any and all documents relating to the Insurance Corporation of America which are now in the possession of the United States Attorney's Office or the North Carolina F.B.I. or both, for the following reasons:

1) These documents are purportedly essential in order to establish a fact necessary for Petitioner's case in *Connecticut v. Insurance Corp. of America,* Civ. Action No. H–87–441 (PCD);

2) The documents obtained from the West Virginia authorities are "public documents" that should not continue to be privileged, private, or secret documents merely because they have been delivered to the United States Attorney pursuant to a grand jury subpoena duces tecum;

3) The government has no right to withhold and prevent inspection and copying of these original public documents when the corporation the documents are about is seeking the disclosure; and

4) The investigation involving the documents has been pending for 3 years, an indictment has been issued against Robert Eugene Bailes, C–CR–87–81–01, and the present owners of Insurance Corporation of America did not purchase the corporation until October 1986. Therefore, the present owners are unlikely to be the subject of the investigation since the grand jury subpoena duces tecum was issued on September 11, 1984.

Alternatively, Petitioner asserts that, pursuant to Rule 6(e)(3)(E) of the Federal Rules of Criminal Procedure, this Court should transfer the present petition to the federal district court where Petitioner's civil claim is pending.

Respondent, the United States Government, asserts that the documents should not be disclosed for the following reasons:

1) The United States Attorney's office is reluctant to disclose the documents because it has learned of complaints to the National Association of Insurance Commissioners concerning the allegedly irregular activities of Dyna Span, another insurance corporation controlled by A.R. Johnson, the owner of Insurance Corporation of America.

2) The original documents obtained from the West Virginia authorities are necessary for the prosecution of Robert Eugene Bailes, the subject of indictment number C–CR–87–81–01. That case involves allegations of fraud and forgery arising out of the corporate documents sought in this proceeding. Therefore, the United States objects "strenuously" to Petitioner's request that the originals be directly disclosed to Petitioner. The United States, however, is willing to make and provide copies of the documents to the West Virginia Department of Insurance.

In reply, Petitioner asserts that "[m]erely reproducing and providing [the documents obtained from the West Virginia

authorities] will not sufficiently protect the interest of the Petitioner nor further justice." Petitioner asserts that the release of any and all material relating to the Insurance Corporation of America obtained during the Grand Jury investigation is necessary in order to protect Petitioner's claim in the judicial proceedings in federal district court in Connecticut. Petitioner asserts that the release of the information is in no way detrimental to the Grand Jury investigation or its continued secrecy because the Grand Jury issued its indictment of Bailes on August 4, 1987.

## THE HEARING

On September 21, 1987, this Court conducted a hearing on Petitioner's request, pursuant to Rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure. Present at that hearing were counsel for Petitioner, Peter M. Feaman, of the law firm MARCH-BANKS & FEAMAN, P.A., and Ken Davies. The United States Government was represented by Carl Horn, Chief Assistant United States Attorney. At that hearing, counsel for Petitioner again advised this Court of the facts surrounding the federal litigation now pending in Connecticut, and Respondent again expressed its reluctance to release the documents directly to Petitioner. Petitioner, in addition to his prior request, also requested a copy of the return of service on the subpoena duces tecum.

After hearing the arguments of the parties, this Court issued an oral order directing the documents to be disclosed subject to certain controlled conditions. Following the hearing, counsel for Petitioner was advised by this Court that Rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure requires petitioners seeking disclosure of matters occurring before the grand jury to serve written notice of the petition upon certain parties: (1) the attorney for the government, (2) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and (3) such other persons as the court may direct. This Court directed Petitioner to serve written notice of the Petition on the Attorney General's office of the State of Con-

necticut. In a letter dated September 25, 1987, counsel for Petitioner advised William J. Prensky, Assistant Attorney General for the State of Connecticut, of the Petition for Disclosure and of the proceedings in this matter. On October 14, 1987, Mr. Prensky advised this Court that the State of Connecticut has elected not to appear or be heard on this matter.

## APPLICABLE LAW AND ANALYSIS

Rule 6(e)(2) of the Federal Rules of Criminal Procedure lays down a "General Rule of Secrecy" that prohibits the disclosure of "matters occurring before the grand jury" by a grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any other such government personnel to whom disclosure is made under the rule. Fed.R. Crim.P. 6(e)(2). This general rule has as its purpose the protection of the confidentiality of the grand jury process. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979) ("We have consistently recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958).

The grand jury's proceedings and matters occurring before the grand jury need to be secret because in our legal system the grand jury serves a dual function: Determining " 'if there is probable cause to believe a crime has been committed and ... protecting citizens against unfounded criminal prosecutions.' " *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972) (footnote omitted)). The United States Supreme Court has stated that:

[S]everal distinct interests [are] served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public,

many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. at 218–19, 99 S.Ct. at 1672–73 (citations and footnotes omitted), *quoted in United States v. Sells Eng'g, Inc.,* 463 U.S. at 424, 103 S.Ct. at 3138.

Documents as well as transcripts of oral testimony come within Rule 6's prohibition against disclosure of "matters occurring before the grand jury." *United States v. Penrod,* 609 F.2d 1092, 1096 (4th Cir.1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980); *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52, 54 (2d Cir.1960); *In re Grand Jury Disclosure,* 550 F.Supp. 1171, 1178 (E.D. Va.1982); *Index Fund v. Hagopian,* 512 F.Supp. 1122 (S.D.N.Y.1981); *Securities and Exch. Comm'n v. Everest Management Corp.,* 87 F.R.D. 100, 105 (S.D.N.Y. 1980). *Contra, e.g., United States v. Weinstein,* 511 F.2d 622, 627 n. 5 (2d Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *In re Grand Jury Investigation of Ven–Fuel,* 441 F.Supp. 1299, 1303 (M.D.Fla.1977); *United States v. Stanford,* 589 F.2d 285 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979). *See generally* Annotation, *What Are "Matters Occurring Before the Grand Jury" Within Prohibition of Rule 6(e) of the Federal Rules of Criminal Procedure,* 50 A.L.R.Fed. 675 (1980). The courts holding that documents obtained by a grand jury subpoena duces tecum do not come within the ambit of Rule 6(e) have reasoned that such documents do not intrinsically reveal what transpired in the grand jury room. *See Everest Management Corp.* 87 F.R.D. at 105; *United States v. Stanford,* 589 F.2d at 291.

The Federal Rules of Criminal Procedure provide certain enumerated exceptions to the general rule of secrecy. Rule 6(e)(3)(C) states in pertinent part that:

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may ... be made—
>
> > (i) *when so directed by a court preliminarily or in connection with a judicial proceeding;*
>
> ....
>
> If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Fed.R.Crim.P. 6(e)(3)(C)(i) (emphasis added). Rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure is a jurisdictional and procedural section that is to be used in conjunction with Rule 6(e)(3)(C)(i), and it states in pertinent part:

> A petition for disclosure pursuant to subdivision (e)(3)(C)(i) shall be filed in the district where the grand jury convened. *Unless the hearing is ex parte,* which it may be when the petitioner is the government, *the petitioner shall serve written notice of the petition upon (i) the attorney for the government, (ii) the parties to the judicial proceeding if disclosure is sought in connection with such a proceeding, and (iii) such other persons as the court may direct. The court shall afford those persons a reasonable opportunity to appear and be heard.*

Fed.R.Crim.P. 6(e)(3)(D) (emphasis added); *see also United States v. Penrod,* 609 F.2d 1092, 1096 & n. 8 (4th Cir.1979) ("Generally, only the court that has jurisdiction over the grand jury has the authority to direct disclosure of the grand jury minutes or documents."), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

Thus, the petition is in the proper court, and, at least, the Government and Petitioner have been formally heard on this matter.

In support of this Court's authority over the present petition, the Supreme Court stated in *Douglas Oil*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979), that

> Quite apart from practical necessity, the policies underlying Rule 6(e) dictate that the grand jury's supervisory court participate in reviewing such requests, as it is in the best position to determine the continuing need for grand jury secrecy. .... Moreover, the personnel of that court—particularly those of the United States Attorney's office who worked with the grand jury—are more likely to be informed about the grand jury proceedings than those in a district that had no prior experience with the subject of the request. We conclude, therefore, that, in general, requests for disclosure should be directed to the court that supervised the grand jury's activities.

441 U.S. at 226, 99 S.Ct. at 1676.

If the district court can "reasonably obtain sufficient knowledge of the proceeding" in which the petitioner requires the grand jury materials, then the court should maintain jurisdiction over the petition. *See* Fed.R.Crim.P. 6(e)(3)(E). If the district court cannot reasonably obtain sufficient knowledge of the subject of the civil proceeding, however, then the court

> shall transfer the matter to [the federal district court where the judicial proceeding giving rise to the petition is pending]. The court shall order transmitted to the court to which the matter is transferred the material sought to be disclosed, if feasible, and a written evaluation of the need for continued grand jury secrecy. The court to which the matter is transferred shall afford the aforementioned persons a reasonable opportunity to appear and be heard.

Fed.R.Crim.P. 6(e)(3)(E). In the present case, the Court has reasonably obtained sufficient knowledge of the subject matter of the pending civil judicial proceeding in Connecticut, and, therefore, the petition will not be transferred to the United States District Court for the District of Connecticut. In determining substance of the present matter, this Court has substantial discretion. *See, e.g., Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675. This discretion, however, can be abused if the court exercises it upon insufficient knowledge of all the relevant circumstances. *Id.* at 228–30, 99 S.Ct. at 1677–78.

Petitioner is seeking public documents obtained by a grand jury subpoena duces tecum. Petitioner wants these documents for their intrinsic value. Petitioner's burden of persuasion is to show "particularized need." *Sells Eng'g, Inc.*, 463 U.S. at 443, 103 S.Ct. at 3148 (applicant for disclosure is required to make "a strong showing of particularized need"); *In re Grand Jury Proceedings, GJ-76-4 & GJ-75-3*, 800 F.2d 1293, 1298 (4th Cir.1986). "Particularized need," however, is to be determined by the trial court by balancing the petitioner's demonstrated need for release against the traditional public interest reasons behind grand jury secrecy. *Id.* at 1298–99 (construing *Douglas Oil*, 441 U.S. 211, 99 S.Ct. 1667, and *Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133). Although a petitioner's burden is to show "particularized need," the circumstances surrounding the application for disclosure will dictate how strong that need must be. *Id.* As the United States Court of Appeals for the Fourth Circuit stated:

> [I]n any case where disclosure is sought, the existence or absence of the traditional needs for grand jury secrecy as well as the needs for disclosure must be carefully assessed under [a] balancing test.... The strength or weakness of the need for secrecy will naturally determine how strong or minimal must be the justification made by the party seeking disclosure.... If the reasons for secrecy, measured by an assessment of the relevant factors, are *weakened or become minimal,* the justification [needed to be shown] for disclosure will [diminish].

800 F.2d at 1299 (emphasis added).

In the present case, Petitioner has shown a need for the documents which outweighs the need for continued secrecy. First, Petitioner has shown that the documents will be used in pending judicial proceedings. Second, Petitioner has shown that the

grand jury has ceased its deliberations and has charged the individual who was the target of the grand jury's investigation. Third, Petitioner has demonstrated that the documents are only sought for their "intrinsic value." Several courts have held that documents obtained by a grand jury subpoena duces tecum should be disclosed when the purpose of the disclosure in a pending judicial proceeding is to discover the documents' intrinsic contents. *United States v. Stanford,* 589 F.2d 285 (7th Cir. 1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *Capitol Indem. Corp. v. First Minnesota Constr. Co.,* 405 F.Supp. 929 (D.Mass.1975); *McArthur v. Robinson,* 98 F.R.D. 672 (D.Ark. 1983).

Petitioner has shown a legitimate need in a pending judicial proceeding, and, therefore, disclosure will be ordered because Petitioner is only interested in the intrinsic value of the documents and not the grand jury's activities. Disclosure of these documents, under the conditions outlined below, will best serve the interests of justice.

### CONCLUSION AND ORDER

IT IS, THEREFORE, ORDERED that Petitioner's request shall be granted to the following extent:

(1) The F.B.I. shall retain custody over the documents and transport the documents requested by Petitioner to the Charleston, West Virginia branch of the Federal Bureau of Investigation.

(2) Once the documents are transported to West Virginia, the F.B.I. shall arrange a meeting with Petitioner's counsel and officials of the West Virginia Department of Insurance, which will be conducted at West Virginia Department of Insurance Office.

(3) While the F.B.I. retains control and custody over the documents, officials of the West Virginia Department of Insurance will be permitted to inspect, copy, and certify such documents as the officials of the West Virginia Department of Insurance, in their sole discretion, choose. The F.B.I. may, in their discretion, advise the West Virginia authorities on any matters concerning F.B.I.'s opinion on the authenticity of the documents.

(4) If the West Virginia Department of Insurance makes any copies of the documents requested by Petitioner and certifies them as true copies, these certified copies shall be provided to counsel for Petitioner.

(5) Counsel for Petitioner will be provided with either a copy of the return of service on the subpoena duces tecum or an accurate list of the documents the F.B.I. received from the West Virginia Department of Insurance pursuant to the subpoena duces tecum.

(6) Upon completion of the matters described above, the F.B.I. shall return the original documents to the Charlotte branch of the F.B.I.

The Clerk is directed to certify copies of this Order to Peter M. Feaman, Ken Davies, the United States Attorney, the Federal Bureau of Investigation, the West Virginia Department of Insurance, and William J. Prensky, Assistant Attorney General of the State of Connecticut.